UNITED STATES, Appellee

v

JOHN P. WINCHESTER, Private, U. S. Marine Corps, Appellant

12 USCMA 74, 30 CMR 74

No. 14,073

Decided January 6, 1961

*Lieutenant Colonel Remmel H. Dudley,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel R. G. Coyne,* USMC.

*Lieutenant John W. Boult,* USNR, argued the cause for Appellee, United States. With him on the brief was *Captain Warren C. Kiracofe,* USN.

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This appeal brings up for review the legal effect of certain actions at the trial by individual military defense counsel.

Four charges of misconduct, cul-

minating in the larceny of rifles for sale in Tijuana, Mexico, were filed against the accused and Private Donald H. Weems.[1] They were referred to a general court-martial for a common trial. The accused was represented by individual military counsel, and Weems appeared with a civilian lawyer. The accused entered a plea of guilty; Weems pleaded not guilty. The Government and Weems proceeded to present their respective cases. When both sides had rested, counsel for the accused informed the law officer that, against his advice and without his knowledge of what was to be said, the accused wanted to testify under oath. Over the objection of counsel for Weems, the accused was allowed to testify. He recounted the manner in which he and Weems committed the offenses. He maintained he had "convinced [Weems] to commit a crime which he . . . did not want to do."

When the accused concluded his testimony, which was given in narrative form, his counsel asked if he had "originated the idea" and had the "contact man" for disposal of the stolen rifles. Receiving an affirmative reply, counsel moved to be allowed to withdraw from the case. The discussion on the motion is as follows:

"IC (Winchester): Mr. Law Officer, at this point I am going to make a motion for appropriate relief on my own behalf, to be relieved of any further duties as defense counsel in this case, and to be relieved from any further participation in this case upon the grounds that I have reason to believe that this witness has perjured himself and I will not be a part and parcel of it.

"LO: Are there any other defense counsel available, Major Knauf, in this office?

"TC: Yes, sir, two. However, I think, Mr. Law Officer, that the motion to have new counsel appointed may be well taken or may not. However, in view of the witness' plea of guilty and in view of his testimony on the stand, I don't perceive that as far as this accused is concerned, there is too great moment. However, Lieutenant Coxon was the appointed counsel and was excused earlier, and at this time I know he is acquainted with the case; and at this time I see no reason why, if you want to grant the motion to Mr. Salter that he be divested of any responsibility in this case, that the accused can be represented by Mr. Coxon, who I believe has been sitting in on the proceedings as a spectator for most of the case, and all of this afternoon anyway.

"LO: Mr. Salter, may I ask you if the opinion you have just expressed in any way would hamper you from continuing the defense of the accused to the best interests of the accused Winchester?

"IC (Winchester): At this point of the trial, Mr. Law Officer, the only possible reflection that it might have upon my conduct as a defense counsel would be in regard to any statement that might be made in mitigation of this offense. Under the circumstances, I think my feelings in the matter are fairly obvious, and, although, I would be willing to try my best to make a fair—any fair and honest appraisal of the situation and make a statement that would be fair to the accused, in regard to his rights on mitigation, I think it is apparent that I would be laboring under certain mental difficulties in that regard.

"LO: I, at this time, desire to deny your request. I would ask the trial counsel to notify the appointed counsel that it is my desire that he re-sit in the case and act as co-attorney for Private Winchester."

At that point First Lieutenant Franklin D. Coxon who had represented the accused during the pretrial proceedings, and who had been excused as appointed defense counsel at the beginning of the trial, was recalled.

---

[1] Conspiracy to commit larceny (Charge I), housebreaking (Charge II), larceny (Charge III), and solicitation to commit an offense (Charge IV), in violation of Articles 81, 130, 121, and 134, Uniform Code of Military Justice, 10 United States Code §§ 881, 930, 921, and 934, respectively.

The accused said he had no objection to Coxon acting as defense counsel in conjunction with his individual defense counsel. The trial continued with the accused being represented by both lawyers. When the day's proceedings ended, the law officer held an out-of-court hearing during which he made further inquiry into the matter. Under questioning by the law officer, the accused said he had no objection to his counsel's statement and to his continuation in the case. He also said it would not have changed his plea of guilty "in any respect," if he had previously informed his counsel of the "information . . . [he] stated on the stand." The law officer further ascertained from individual counsel that if he had known earlier of the accused's testimony it would not have changed his handling of the case. Additionally, it was determined that, while he had represented the accused in the preliminary proceedings, Lieutenant Coxon was "somewhat in the dark" about the allegation of perjury. Accordingly, he was again excused from further participation, with the consent of the accused.

In due course, the court-martial found the accused and Weems guilty as charged. During sentence procedure, individual defense counsel made a long statement on behalf of the accused. He reviewed the accused's military and civilian background and the financial difficulties he experienced as a result of the loss of his pay records. His final comments, dealing with the accused's testimonial representation that he was the principal actor in the commission of the offenses, are as follows:

"There's one other point that I feel, in all fairness and justice, I should bring up. The accused Winchester took the stand the other day in court to make a statement. If that statement impressed the court as an attempt to take blame upon himself for the actions of another person, I ask the court to consider that not as aggravation, but rather as something in the background of this accused, which was loyalty to a certain philosophy or a certain set of principles. Now whether or not we agree with his philosophy is immaterial. The point is, he has been taught to form certain loyalties, in growing from the date of birth to twenty years old, in the type of environment and background that he has. This loyalty might have not expressed itself in the most desirable point of view, from our point of view. But what this accused did was, in effect, apply one of the basic principles that the Marine Corps requires of its members, namely loyalty. Now if that loyalty was misdirected, that is one thing. But the point is, this man was loyal to a fellowman who was in difficulty. And I ask the court to consider his statement in that regard, rather than simply as an attempt, a poor attempt, to get someone else off. Consider it from the point of view of loyalty of one man to another, and in the light of his background, such loyalty is understandable and is not unreasonable.

"With these remarks I ask the court only to adjudge a fair and reasonable sentence under the circumstances."

The court-martial sentenced Weems and the accused to a dishonorable discharge, total forfeitures, and confinement at hard labor for eight years. The convening authority approved the findings of guilty, but reduced Weems' confinement to four years and that of the accused to two years; the latter reduction was made in accordance with a pretrial agreement with the accused. One of the matters considered by the convening authority, as indicated by the discussion of the issue in the post-trial review, was the effect of counsel's statement that the accused had "perjured himself."

The staff judge advocate considered the matter in detail, from the standpoint of both the accused and Weems. He concluded, and recommended to the convening authority, that counsel's statement was "unfortunate" and "should have been made out of the court's hearing" but whatever harm it might have caused could be cured by reduction of the sentence. The board of review also considered the point. It held that individual military counsel

"violated the attorney-client privilege" but that the convening authority's action eliminated any possible prejudice resulting from his conduct.[2]

Appellate defense counsel challenge the correctness of the conclusion below. They maintain the accused was denied due process of law in that his counsel was so lacking in diligence and competency as to reduce the trial to a sham. See Lunce v Overlade, 244 F2d 108 (CA 7th Cir) (1957). On the other hand, the Government contends, among other things, that the law scrutinizes the conduct of appointed counsel more closely than it does that of counsel chosen personally by the accused. And, in the latter situation, the accused must bear the burden of errors of conduct, unless he repudiates the acts at the trial. See United States v Handy, 203 F2d 407, 426, 428 (CA3d Cir) (1953). It argues, therefore, that since the accused was accorded the opportunity to repudiate his counsel, but refused to do so, he cannot now complain that he was denied effective representation.

Unquestionably, counsel's action in charging in open court that his client had committed "perjury" ■ was wrong. He may, in fact, have been informed previously by the accused that he was not the dominant character in the criminal enterprise with Weems, but the existence of two inconsistent statements does not establish which of the two is true. Branding the accused a liar before the court might lessen the force of the accused's testimony of his role as "king pin" of the operation, and thus eliminate a possible basis for a more severe sentence, but it also presented the risk that the court members might resent the accused's attempt to dupe them, and thus lead them to adjudge a more severe sentence.[3] At the same time, if counsel said nothing, and it was known to the authorities that the accused's testimony was false, his silence might be misconstrued as approval of the deception, and he might become personally involved. Counsel's consternation at the unexpected action of the accused is, therefore, understandable. However, the form of his response to the situation was erroneous.

The board of review concluded that counsel's statement constituted a violation of the attorney-client ■ privilege. This is an arguable conclusion. The accused had entered into a pretrial agreement with the convening authority, and it is not unreasonable to suppose that in the course of negotiation of the agreement he told counsel of the part he played in the commission of the offense, with the intention that the information be communicated to the convening authority. If there is a communication to the attorney, with the intention that the matter be passed on to others, privilege does not attach to the communication. It has been held, for example, that information imparted to counsel with the intention that the information be forwarded to the reviewing authority for consideration in his review is not a communication protected by the attorney-client privilege. United States v Shibley, 112 F Supp 734, 741–742 (SD Cal) (1953); see also Riley v State, 180 Ga 869, 181 SE 154. Consequently, it would appear that more evidence is required before it can be said that the privilege has been violated. Be that as it may, we are not dealing solely with a question of improper disclosure of a privileged communication but also with the problem of inadequacy of counsel.

We begin with the fact that a claim of inadequacy of representation does not deprive the court-martial of its power to proceed. United States v Best, 6 USCMA 39, 19 CMR 165; see also United States v Gardner, 9 USCMA 48, 25 CMR 310. Counsel's statement,

---

[2] Weems' conviction was set aside on another ground.
[3] Why the accused wanted to establish himself as the "leader" is open to speculation. Possibly, he thought his pretrial agreement insulated him from the effect his testimony might have in influencing the court to impose a more severe sentence. Yet, in view of Weems' plea of not guilty, it is difficult to see how he could have believed his testimony would help Weems.

therefore, must be considered in the light of the surrounding circumstances. The first and most important circumstance is that the accused entered a plea of guilty to all charges, and persisted in it after full advice by the law officer as to its legal effect. Second, the accused insisted on taking the stand against the advice of his counsel. Third, the accused's testimony was consistent with his plea of guilty, and established his criminality.

The accused's plea of guilty and his voluntary testimonial confession of guilt eliminate all possibility of prejudice as to the findings. United States v Gardner, supra. That leaves for consideration the effect of counsel's statement on the sentence. The convening authority and the board of review merely considered whether counsel's allegation of perjury led the court-martial to impose a more severe sentence than it would have otherwise adjudged. That is not the real question. What is at issue is whether counsel's belief in the falsity of the accused's statement so undermined his representation of the accused as to amount to an abandonment of the cause. What better indication of the answer to that question can we look to than counsel's own words. In open court, he represented that while he was willing to try to be fair, it was "apparent that . . . [he] would be laboring under certain mental difficulties" in regard "to any statement that might be made in mitigation." The firmness of his conviction that the accused was lying, and his expressed desire to avoid any possible connection with accused's testimony, stand out so strongly and so starkly, that his representation of the accused during the sentence phase of the trial takes on the appearance of perfunctory formalism. An attorney cannot pursue a course of conduct that clashes with his obligation to represent his client to the best of his ability. Individual counsel made a long statement in the accused's behalf, but "in the record we can figuratively see . . . [him] shaking his head and saying, 'no, it isn't so.'" United States v McFarlane, 8 USCMA 96, 99, 23

CMR 320. The prejudice to the accused's rights cannot be cured by a reduction in the period of confinement adjudged by the court-martial. Cf. United States v Fowle, 7 USCMA 349, 22 CMR 139.

The decision of the board of review as to the sentence is reversed. A rehearing thereon is ordered.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I concur with the conclusion that trial defense counsel erred when he chose the wrong forum to air the dispute between himself and his client. Significantly, the staff judge advocate, convening authority, and the board of review all reached the same conclusion. Accordingly, the only issue left to be resolved is whether any prejudice suffered by the accused has been purged. My associates find no harm on the findings, and obviously that result is appropriate for the error occurred after a plea of guilty and the testimony by the accused was consistent with the plea. But they go on to hold that a rehearing on the sentence must be ordered, apparently on the theory that the action taken by intermediate reviewing authorities is all for naught, except as it benefits the accused by reducing the maximum sentence imposable on a rehearing. Parenthetically, I note that in their briefs appellate defense counsel do not argue prejudice on sentence. In that they display discrimination for, unless they can win this case on their theory that the error was so grave it should not be assessed for harm, they have nothing substantially to support their cause.

A board of review and a convening authority have been given the power to assess the appropriateness of sentence based on the entire record. It has been the law of this Court that if they find error and reassess sentence, giving consideration to the possible impact of the irregularity, we do not reverse unless we find an abuse of discretion. In the case at bar, the error and its effect was appraised by each, and the sentence

as it reached us was considered appropriate. Certainly, as I hope to point out, there is nothing in this record which should cause us to hold that the lower reviewing tribunals abused their discretion in their actions on the sentence.

The accused was charged jointly with one Weems of having committed four serious offenses. He pleaded guilty to all and, by his confession while on the witness stand, was the ringleader. The maximum period of confinement to which he could have been sentenced exceeded fifteen years. Fortunately for him, his trial defense lawyer obtained a commitment from the convening authority that if he pleaded guilty he would suffer no more than a two-year term of incarceration. I will leave it to the imagination of the reader as to whether this arrangement could have been effectuated had the accused at that time confessed to being the principal actor. However, regardless of that facet of the controversy, the court-martial concluded eight years' confinement was appropriate. We must, therefore, consider that the convening authority's reduction and the board of review's affirming action knocked six years' confinement off the period found appropriate by the original tribunal.

If, as the accused testified on the stand, he was the ringleader, then he is indeed the beneficiary of unusual mercy. The convening authority concluded that four years' confinement was an appropriate period of confinement for a secondary participant. But, even if they were partners in crime, he received one-half the confinement meted out to his conspirator. Granting he should have been given some consideration for his acknowledgment of guilt, I am convinced that had the error not occurred, his plea of guilty and his confession that he engineered the illegal venture would have insured him a sentence far more severe than the one affirmed. Particularly is that true when he is a three-time loser. His record shows that he has two prior convictions, one which involved a seven months' absence without leave. The sentence involved a bad-conduct discharge which had not been executed at the time of this trial. It would thus appear that any harm occasioned by accused's trial defense counsel had been purged effectively and entirely by a six-year reduction in the period of confinement. I have limited my discussion to the period of incarceration deliberately, for I doubt that any one would suggest that with a prior bad record, an accused pleading guilty to conspiracy, housebreaking, larceny of rifles worth $651.00, and soliciting another to commit a criminal offense would escape forfeitures and a separation by dishonorable discharge.

To emphasize the treatment given this issue by the board of review, I quote the relevant portion of its decision:

"If any question remains as to whether or not the accused Winchester was prejudiced because of a violation of the attorney-client privelege [sic], such must be resolved against him if only because of the sentence as it now stands. As the result of a pretrial agreement brought about by his trial defense counsel, the convening authority has reduced the punishment to dishonorable discharge, forfeiture of all pay and allowances and confinement at hard labor for two years. This Board of Review has scrutinized the appropriateness of the sentence in light of the error assigned and has determined that no further reduction in the sentence is warranted. United States v Cruscoe [sic], 3 USCMA 793, 14 CMR 211; United States v Atkins, 8 USCMA 77, 23 CMR 301."

In addition to the authorities cited by the board, in United States v Miller, 10 USCMA 296, 27 CMR 370, we held that a board of review is free to measure the possibility of harm to an accused and purge the damage flowing therefrom. Twice this accused has been the beneficiary of that measurement, and I do not believe he is entitled to additional bites at the apple. Accordingly, I would affirm the decision of the board of review.