UNITED STATES, Appellee

v

RONALD L. McDONALD, Private, U. S. Marine Corps, Appellant

---

21 USCMA 84, 44 CMR 138

No. 24,113

November 26, 1971

*Lieutenant Charles W. Corddry, III*, USNR, argued the cause for Appellant, Accused. With him on the brief was *J. Francis Pohlhaus, Esquire.*

*Lieutenant James B. Ginty*, USNR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.*, USN.

## Opinion of the Court

FERGUSON, Senior Judge:

Following the accused's conviction of four specifications of assault with intent to murder (throwing a grenade into a hut where four sergeants were asleep),[1] in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, the court-martial sentenced the accused to the maximum imposable by law—dishonorable discharge, total forfeitures, and confinement at hard labor for eighty years. The convening authority reduced the confinement portion of the sentence to twenty-five years, despite the recommendation of the staff judge advocate "that the sentence be approved as both legal and appropriate." The Court of Military Review further reduced the confinement to ten years. This Court granted review on an issue not previously considered by reviewing authorities:

Whether the defense counsel abandoned his client in his presentence argument by referring to his own "misgivings."

Although he did not testify on the merits in this case, the appellant read a sworn statement to the court, during the proceedings on sentence, in which he denied that he had committed the charged offenses.

"WITNESS: Members of the court, I've always thought that if a man did something wrong, he should stand up and take whatever punishment it is. Right now I'm standing up to take whatever punishment that you will give me. I will be the first one to admit that I have not been the best Marine. Just like most of the people in Vietnam, I have my problems. I've tried my best to work them out, but maybe there is something inside me that won't let me. I don't expect you to believe it at this time, but *I swear I didn't throw that grenade.* I wish I could cry or laugh, but I

---

[1] Two of the victims were uninjured. One received minor lower back injuries and was released after treatment at the dispensary. The fourth sustained flesh wounds in the upper back and arm and was hospitalized for ten days. The military judge declined a prosecution request to instruct on the lesser included offense of the intentional infliction of grievous bodily harm on the ground that there was insufficient testimony to reflect that the wounds were sufficiently serious.

can't, because I guess that's just the way I am. Most of all, it hurts my family and myself, because they're one and the same. *I just hope the truth will come out and the real guilty one punished,* but, in a way, it's very hard to accept a punishment I know I'm about to receive. The brig is a place for no one individual. As for myself, I think I can withstand the strain long enough. I've been locked up for almost two months. I take pills for my nerves four times a day. I have high blood pressure, and the tension builds up in me all the time, and those five rounds going over my head every 15 or 20 minutes. I've never been locked up before. Now I see how bad it is. I don't think I will last much longer. This may not mean a great deal to the members of the court, but it has a lot of effect on me. There's not very much I can say now, after having been found guilty. I'm hoping that there is some way I will be free. In a way, I shall always be free. I feel conscious, and I know someday, somebody will help me. Thank you, members of the court." [Emphasis supplied.]

The accused was not further examined nor was he cross-examined on his statement. The prosecution presented no evidence in aggravation.

The trial defense counsel then argued:

"DC: *Members of the court, I, myself, am in a kind of difficult position right now. I'm supposed to ordinarily at this point in the trial point out the man's proficiency and conduct marks, bring in a sergeant —his platoon leader—and have them say what a good Marine he is, what a good job he's done, and how he should be returned to duty. I can't do that in this case and still be honest to myself, because I've still got quite a few misgivings.* So I'm going to try and confine my comments to certain relevant things which you can consider. I'd like for you to consider the letters that his parents and friends have written from Washington, D. C. I think you know what kind of town Washington, D. C. is, and for a man, any young man, to come from Washington and have people speak of him like these letters speak of Ronald, I think that is something commendable right there. I also ask you to look at Ronald's age, look at his conduct, and also think more in terms of him, not so much retribution and what kind of effect it will have on the command. I'd like to think that your primary interest is what kind of effect this is going to have on this young man right here. 40 years confinement? What would he be when he got out? 59 or 60. How about 10? What would he be? Is there any way he could return to society and perform some sort of useful job and contribute something valuable to the society in which he is going to have to live? I think that if you look at things from this point of view, if you look at the things that Ronald McDON-ALD said on the stand today, if you'll honestly believe only a few of things that he has said and the other people have said, I think that a great deal of clemency, a great deal of clemency, should be exercised by you this afternoon. I think he's a sincere young man and I think he showed that when he got up on the stand. I believe he can be returned. I've spoken with him and I've talked to him for two, two and a half months now. I've gotten to know him probably a lot better than anyone else here in this command has, and I can also seriously say I think with any kind of constructive supervision, Ronald can be returned to perform a very, very useful job, not only to the military, but the society and to the place where he lives, in a very short period of time. Thank you." [Emphasis supplied.]

The court required only seventeen minutes to decide upon and to return the absolute maximum sentence.

In the past, this Court has been called upon to determine the adequacy of vari-

ous counsel. See generally, United States v Horne, 9 USCMA 601, 26 CMR 381 (1958); United States v Huff, 11 USCMA 397, 29 CMR 213 (1960); United States v Winchester, 12 USCMA 74, 30 CMR 74 (1961); United States v Rose, 12 USCMA 400, 30 CMR 400 (1961); United States v Broy, 14 USCMA 419, 34 CMR 199 (1964); United States v Holcomb, 20 USCMA 309, 43 CMR 149 (1971), and cases cited therein. Because "[t]he uniformed accused, as well as his civilian counterpart, is therefore justly entitled to receive from his attorney a full measure of assistance," we have consistently emphasized "the importance of an accused's right to the assistance of competent counsel during *all phases* of the proceedings against him. See Powell v Alabama, 287 US 45, 53 S Ct 55, 77 L Ed 158 (1932)." (Emphasis supplied.) United States v McMahan, 6 USCMA 709, 717, 21 CMR 31 (1956). With respect to a defense counsel's responsibilities during the sentencing proceedings, we stated in United States v Allen, 8 USCMA 504, 507, 508, 25 CMR 8 (1957):

"The sentence proceeding is an integral part of the court-martial trial. United States v Strand, 6 USCMA 297, 306, 20 CMR 13 [1955]. Plainly, therefore, counsel's duty to represent the accused does not end with the findings. Remaining for determination is the question of the accused's liberty, property, social standing—in fact, his whole future. And his lawyer is charged with the substantial responsibility of appealing on his behalf to the conscience of the court.

"No hard and fast rule can be promulgated to test the sufficiency of the discharge of counsel's responsibilities. See United States v Hunter, 2 USCMA 37, 6 CMR 37 [1952]. Sometimes a single action can be sufficient to show ineffective representation. United States v Walker, 3 USCMA 355, 12 CMR 111 [1953]. On other occasions 'cumulative . . . omissions at the trial'

will spell out the inadequacy. United States v McMahan, 6 USCMA 709, 723, 21 CMR 31 [1956]. Each case must be decided on its own facts; and in a given case there may be a legitimate difference of opinion as to the effect of actions or omissions of counsel in his representation of the accused."

We need not belabor the point except to add that "ineffective assistance" of counsel can, in some cases, rise to the level of "a denial of due process." United States v Horne, supra, at page 606.

In the case at bar, we believe that defense counsel's "quite a few misgivings," which prevented him from presenting evidence that the accused was a "good Marine" and "should be returned to duty," was especially damaging in light of counsel's own assertion that he had spoken and talked with the accused for "two and a half months," and had "gotten to know him probably a lot better than anyone else here in this command." In these circumstances, it would not be unreasonable for the court to conclude that counsel did not, himself, believe the accused to be entitled to clemency. Cf. United States v Huff, United States v Winchester, and United States v Holcomb, all supra. Such an impression is obviously contrary to the best interests of the accused. United States v Holcomb, supra.

The accused was nineteen years of age at the time he allegedly committed the charged offenses. He had completed eleven years of schooling and his intelligence rating, as computed by the military, was 98. His average proficiency and duty marks were 3.8 and 4.1, respectively. He had served in the Marine Corps for approximately nineteen months and was entitled to wear the National Defense Service Medal and the Vietnam Service Medal with one star.

Under the circumstances of this case and considering that it took but seventeen minutes for the court-martial to deliberate, vote on proposed sentences beginning with the lightest,

**87**

reduce the sentence to writing, and announce in open court that the maximum penalty had been adjudged (United States v Huff, supra), we believe that a rehearing on sentence is in order. United States v Winchester and United States v Holcomb, both supra.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on sentence may be ordered.

Chief Judge DARDEN and Judge QUINN concur.