UNITED STATES

v.

**Airman Basic David W. RADFORD, FR 262–45–4437 United States Air Force.**

**ACM S24841.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 14 June 1979.

Decided 6 June 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter and Captain James R. Van Orsdol.

Before HERMAN, ARROWOOD and MILES, Appellate Military Judges.

## DECISION

MILES, Judge:

This case raises delicate questions about the duties of trial defense counsel. Appellate defense counsel argue that the trial defense counsel should have been excused because of ethical constraints which precluded him from aiding testimony known to him to be false. We disagree, and hold that the accused received the effective assistance of counsel throughout the proceedings. We also hold that the military judge did not err to the prejudice of the accused by commenting that the introduction of alibi evidence necessitated a delay.

Contrary to his pleas, accused was convicted by special court-martial of sale of marijuana in the hashish form in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.[1] The approved sentence extends to a bad conduct discharge and confinement at hard labor for one month.

Airman Robinson, an informant working for the Air Force Office of Special Investigations (OSI), testified that on the day of the offense the accused approached him at one o'clock in the afternoon and offered to sell hashish. Both men worked on the flightline and knew each other. Robinson expressed interest, and at 4:00 o'clock the accused went to Robinson's barracks room. Robinson then gave the accused £20.00 in British currency, and the accused returned to the room at 5:30 and delivered the hashish. OSI personnel were not notified in advance of the sale, but between 5:30 and 6:00 o'clock Robinson contacted the OSI and gave to them a package containing 6.55 grams of hashish.

When the accused took the witness stand, the preliminary identification questions were asked by the prosecution, but the defense counsel did not ask any questions. Instead, the accused testified, in a narrative form, that he worked that day until 5:00

---

1. He was acquitted of a separate charge of possession of marijuana, and an alleged failure to go was dismissed by the military judge.

o'clock, picked up his mail, ate dinner with a friend at 5:30 and later spent the evening at a local pub. He denied the offense, saying he had never sold hashish in his life and "wouldn't know where to get it much less sell it." At the close of cross-examination of the accused, the military judge asked the trial counsel in open court if he had received notice of the defense of alibi. The trial counsel said no. The defense counsel then suggested alibi was not really raised as to the specific times in question and asked for an Article 39(a) session.

In the out of court session, defense counsel said that if he made an offer of alibi witnesses he would be remiss in his duties, and asked to be excused from the case. The military judge recognized the import of what defense counsel was saying—that he, from what his client told him, knew accused's testimony was false and that accused's decision to take the stand was his own, against the advice of counsel. The military judge made no explicit ruling on the request, nor did defense counsel pursue the request to be excused when told he was not expected to produce the alibi witnesses suggested by the accused's testimony. During the Article 39(a) session, the accused was not asked if he wanted different counsel. When the full court reconvened, the court members were advised that because of the sudden introduction of the defense of alibi, the prosecution was entitled to additional time. In rebuttal, the prosecution presented other evidence which tended to discredit the accused's testimony that he worked until 5:00 o'clock. Witnesses also testified that the accused's credibility for truth and veracity was poor, and that they would not believe him under oath.[2]

Although not explicitly set forth in the record, the ethical problem facing trial defense counsel was clearly the accused's testimony, particularly his claim that he was working until 5:00 o'clock and his sworn denial of the offense. Because counsel declined to assist accused's testimony, his appellate counsel argue that he was denied the effective assistance of counsel when the military judge failed to replace that counsel.

The constitutional and statutory right to the effective assistance of counsel requires that counsel act as a diligent and conscientious advocate for his client throughout the criminal proceedings. *United ed States v. Rivas*, 3 M.J. 282 (C.M.A.1977); *United States v. McDonald*, 21 U.S.C.M.A. 84, 44 C.M.R. 138 (1971). For example, an accused is entitled to be fully advised and aware of the limitations and restrictions on counsel because of conflicts of interest or potential conflicts of interest. *United States v. Davis*, 3 M.J. 430 (C.M.A.1977); *United States v. Blakey*, 1 M.J. 247 (C.M.A. 1976). Situations involving conflicts of interest are, however, dissimilar to the dilemma here. The prejudice arising from conflicts of interest may be eliminated by replacement of counsel, but the ethical restrictions relevant here would apply to any attorney representing the accused.

While an accused is entitled to the effective assistance of counsel, he is not entitled to have counsel assist with testimony or evidence known to the counsel to be false. The law requires honest, loyal, genuine and faithful representation, but the honesty is both to the client and to the court. Counsel must confine his conduct to recognized legal ethics in protecting his client. *State v. Henderson*, 205 Kan. 231, 468 P.2d 136 (1970); *Thornton v. United States*, 357 A.2d 429 (D.C.Ct.App.1976), cert. denied, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). Recognized professional ethics[3] require that the defense counsel

2. Accused's credibility was also attacked by his admission, on cross-examination, of a conviction by a British court six months previously for possession of hashish.

3. For example, American Bar Association Standards Relating to the Administration of Criminal Justice, "Prosecution Function and Defense Function," § 4–7.7 (Tentative Draft, Fall 1978) states:

Testimony by the defendant.

(a) If the defendant has admitted to defense counsel facts which establish guilt and counsel's independent investigation established that the admissions are true but the defendant insists on the right to trial, counsel must

clearly disassociate himself from testimony of an accused that counsel in fact knows, from conversations with the accused, to be false. *State v. Henderson, supra*; Anno., 64 A.L.R.3d 385 (1975).

■ Counsel facing this problem should ask to withdraw from the case if feasible.[4] The threat of withdrawal may dissuade the client from pursuing the false testimony. Faced with a request for withdrawal, a judge must make a difficult decision calling for the exercise of sound judicial discretion. *State v. Henderson, supra.* Conceivably, the antagonism between counsel and client, because of the false testimony, may have become so intense as to require replacement of counsel. The military judge should ascertain through inquiry of the accused what his desires are. If there is antagonism antithetical to an effective defense, the counsel should be replaced. But the accused's desires are not controlling, for he is entitled only to competent ethical counsel, not counsel who might choose to disregard ethical restrictions. *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir. 1978); *Thornton v. United States, State v. Henderson*, both *supra.*

■ Although disassociating himself from the false evidence, counsel must not state to the jury or fact finder the reasons for doing so or publicly indicate his disbelief of the testimony. *Lowery v. Cardwell, supra; United States v. Winchester*, 12 U.S.C. M.A. 74, 30 C.M.R. 74 (1961).

■ In this case, we find no error prejudicial to the rights of the accused. Counsel did, as he was ethically bound to do, disassociate himself from his client's testimony. The fact that counsel was ethically precluded from presenting, in normal fashion, the accused's testimony or asserting its worthiness of belief were not grounds to replace him as counsel. When counsel requested withdrawal from the case, the military judge should have inquired if the accused wished to proceed with his appointed counsel. Through inquiry, the military judge could then determine if antagonism between them would result in inadequate representation. But the failure to inquire here was not critical. The accused did not demand a change of counsel, and there was no indication in the record of trial of antagonism between counsel and client which might have compelled replacement. Even if the accused had urged that his counsel be replaced, denial of such a request would not be an abuse of discretion in the absence of evidence of such antagonism. *State v. Henderson, supra.*

Most importantly, at no time was counsel's disbelief of his client's testimony com-

strongly discourage the defendant against taking the witness stand to testify perjuriously.

(b) If, in advance of trial, the defendant insists that he or she will take the stand to testify perjuriously, the lawyer may withdraw from the case, if that is feasible, seeking leave of the court if necessary, but the court should not be advised of the lawyer's reason for seeking to do so.

(c) If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises immediately preceding trial or during the trial and the defendant insists upon testifying perjuriously in his or her own behalf, it is unprofessional conduct for the lawyer to lend aid to the perjury or use the perjured testimony. Before the defendant takes the stand in these circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner without revealing the fact to the court. The lawyer may identify the witness as the defendant and may ask appropriate questions of the defendant when it is believed that the defendant's answers will not be perjurious. As to matters for which it is believed the defendant will offer perjurious testimony, the lawyer should seek to avoid direct examination of the defendant in the conventional manner; instead, the lawyer should ask the defendant if he or she wishes to make any additional statement concerning the case to the trier or triers of the facts. A lawyer may not later argue the defendant's known false version of facts to the jury as worthy of belief, and may not recite or rely upon the false testimony in his or her closing argument.

4. There may be many situations when it is not feasible to request to withdraw such as in a trial before a military judge alone or when the issue arose suddenly at or before trial. See *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir. 1978).

municated to the trier of facts, as in *United States v. Winchester* and *Lowery v. Cardwell*, both *supra*. Indeed, defense counsel proceeded diligently, as was his duty, in calling one witness (other than the accused), cross-examining prosecution witnesses and presenting a strong final argument. Thus the accused received all that he was entitled to, a fair trial and defense by competent, diligent and ethical counsel; he can expect no more.

■ One other matter warrants comment. Advice to the court members that the sudden introduction of alibi evidence necessitated a delay for the prosecution was a fact readily apparent to the court members. The court was instructed later to disregard any comment by the military judge indicating an opinion on accused's guilt or innocence, in addition to instructions on the defense of alibi and the elements of the offense. We perceive no error prejudicial to the accused.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HERMAN, Senior Judge and ARROWOOD, Judge, concur.