UNITED STATES, Appellee,

v.

David W. RADFORD, Airman Basic, U. S. Air Force, Appellant.

No. 39,506.
ACM S24841.

U. S. Court of Military Appeals.

Dec. 20, 1982.

For Appellant: *Major Willard K. Lockwood* (argued); *Colonel Larry G. Stephens* (on brief); *Colonel George R. Stevens, Second Lieutenant Anthony D. Martin,* a law student at Georgetown University Law Center.

For Appellee: *Captain Richard O. Ely, II* (argued); *Colonel James P. Porter, Major James R. Van Orsdol* (on brief).

## Opinion

FLETCHER, Judge:

Review was granted in this case [1] in order for this Court to consider the following questions:

### I

WHETHER THE ACTIONS OF THE MILITARY JUDGE DENIED THE ACCUSED THE EFFECTIVE ASSISTANCE OF COUNSEL.

### II

WHETHER THE MILITARY JUDGE ERRED WHEN HE INSTRUCTED THE COURT MEMBERS THAT THE DEFENSE HAD MADE A "SUDDEN INTRODUCTION OF THE DEFENSE OF ALIBI." [2]

Further review of the record indicates that some amplification of these questions is necessary. Accordingly, the issues for review are modified as listed below and will be discussed *seriatim:*

A. Was it proper for defense counsel to expose before the members his dispute with his client over the importance of his alibi testimony?

B. Did defense counsel properly act with respect to the presentation of appellant's case for an alibi?

C. Should the military judge have inquired *sua sponte* of appellant whether he desired that his defense counsel be excused and a new one appointed?

D. Was appellant denied the effective assistance of counsel?

The first two questions must be answered in the negative and the latter two in the affirmative. In view of the substantial possibility of prejudice to appellant in this case, the decision of the Court below must be reversed.

The Court of Military Review summarized the Government's case on the charged offense as follows:

Airman Robinson, an informant, working for the Air Force Office of Special Investigations (OSI), testified that on the day of the offense the accused approached him at one o'clock in the afternoon and offered to sell hashish. Both men worked on the flightline and knew each other. Robinson expressed interest, and at 4:00 o'clock, the accused went to Robinson's barracks room. Robinson then gave the accused £ 20.00 in British currency, and the accused returned to the room at 5:30 and delivered the hashish. OSI personnel were not notified in advance of the sale, but between 5:30 and 6:00 o'clock Robinson contacted the OSI and gave to them a package containing 6.55 grams of hashish.

9 M.J. 769, 770.

The lower appellate court also found certain facts concerning the events that occurred at trial:

When the accused took the witness stand, the preliminary identification questions were asked by the prosecution, but the defense counsel did not ask any questions. Instead, the accused testified, in a narrative form, that he worked that day until 5:00 o'clock, picked up his mail, ate dinner with a friend at 5:30 and later spent the evening at a local pub. He denied the offense, saying he had never sold hashish in his life and "wouldn't know where to get it much less sell it." At the close of cross-examination of the accused, the military judge asked the trial counsel in open court if he had received notice of the defense of alibi. The trial counsel said no. The defense counsel then suggested alibi was not really raised as to the specific times in question and asked for an Article 39(a) session.

1. Contrary to his pleas, appellant was found guilty of selling hashish, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge and confinement at hard labor for 1 month. The convening and supervisory authorities approved this sentence and the Court of Military Review affirmed. 9 M.J. 769 (C.M.A.1980).

2. It is unnecessary to address this question separately in the present case.

In the out of court session, defense counsel said that if he made an offer of alibi witnesses he would be remiss in his duties, and asked to be excused from the case. The military judge recognized the import of what defense counsel was saying—that he, from what his client told him, knew accused's testimony was false and that accused's decision to take the stand was his own, against the advice of counsel. The military judge made no explicit ruling on the request, nor did defense counsel pursue the request to be excused when told he was not expected to produce the alibi witnesses suggested by the accused's testimony. During the Article 39(a) session, the accused was not asked if he wanted different counsel. When the full court reconvened, the court members were advised that because of the sudden introduction of the defense of alibi, the prosecution was entitled to additional time. In rebuttal, the prosecution presented other evidence which tended to discredit the accused's testimony that he worked until 5:00 o'clock. Witnesses also testified that the accused's credibility for truth and veracity was poor, and that they would not believe him under oath.[2]

---

[2] Accused's credibility was also attacked by his admission, on cross-examination, of a conviction by a British court six months previously for possession of hashish.

*Id.* at 770–71.

Review of these facts indicates the conflict in testimony presented to the members of the court-martial. Appellant's testimony contradicted the government witness, Robinson, who had testified that he was with this informant when the sale was arranged (1:00 p.m.), when the money was paid (4:00 p.m.), and when the drugs were delivered (5:30 p.m.). Appellant denied selling the hashish or possessing hashish on May 15, 1979, the day of the alleged sale. He also asserted that on May 15, he did not recall approaching Robinson at any time; that at 4:00 p.m. he was at work and not in Robinson's room in the barracks; and that at 5:30 p.m. he was eating chow with his friend Bristow, and not in Robinson's barracks room. He could not recall anyone seeing him at work until 5:00 p.m. but claimed someone should have.

Appellant was cross-examined by trial counsel as to his direct testimony and a court member asked him through the military judge where Don Bristow was then located. Appellant stated that Bristow was still assigned to the base Communications Squadron. A second member asked if appellant's supervisor, Master Sergeant Skinner, could verify his time on duty on May 15, 1979. Appellant said that he believed he could. Bristow was never called by any party or the court, while Skinner was called by the Government and testified that appellant could have worked to 5:00 p.m., but he did not know this for a fact.

■ This evidence is part unsupported denial and part denial with alibis. *See United States v. Jones,* 7 M.J. 441, 444 (C.M.A.1979) (Fletcher, C.J., dissenting). The alibi that he was at work averred that he could not have also been at the informant's room at 4:00 p.m. when the money was allegedly exchanged. The alibi that he was at the chow hall at 5:30 p.m. with Bristow avers that he could not have also been at the informant's room at the same time delivering the drugs. The Government has the burden to disprove these alibis beyond a reasonable doubt. *Id.* at 443 n. 1; *see* para. 6–5, Department of the Army Pamphlet 27–9, *Military Judges' Guide* (May 19, 1969).

### A

As earlier indicated, when the cross-examination of appellant was finished, the military judge asked defense counsel if he had given notice of an alibi defense to the Government as required by that court's rule. The following colloquy took place before the members:

MJ: Let me ask you this question, Trial Counsel: Bearing in mind Rule 43 of this court that if the defense intends to offer any sort of alibi defense to a case they are required to notify you of that in advance. Have you been notified in advance of any intent to offer an alibi defense?

TC: I specifically requested that yesterday and I was not told of any alibi.

MJ: Very well.

ACC: Your Honor, I've been screaming that ever since this came up.

DC: Your Honor, I don't believe that what the accused is saying is a defense of alibi to the time Robinson says these things occurred. He went on and talked about a lot of other things but I don't believe he's offering a defense of alibi as to the specific times. We're not bringing in any witnesses or anything concerning this. That's my position, Your Honor; that alibi is not—

MJ: He's not denying that he was somewhere else when the informant says he was there in the barracks transacting drug deals, or a drug deal?

DC: No, Your Honor—Let's have a 39a session.

■ This exchange before the members reflected a serious dispute between appellant and his counsel over whether his testimony established an alibi to the times and places testified to by Robinson. It was erroneous for counsel to expose this dispute in open court before the members. *United States v. Winchester,* 12 U.S.C.M.A. 74, 78, 30 C.M.R. 74, 78 (1961). If discrepancies between Robinson's averment of times and those of appellant were immaterial, it was the Government's burden to establish this fact before the court, and defense counsel had no right to comment on the evidence adversely to his client. *See generally Lowery v. Cardwell,* 575 F.2d 727 (9th Cir.1978). Even assuming defense counsel was only justifying his failure to comply with an alibi-notice rule, his disagreement with his

client *in open court* and his announcement of his intent not to call further witnesses undermined not only appellant's testimony but also the confidentiality of their lawyer-client relationship. *See* ABA Standards, The Defense Function §§ 5.2 and 3.1 (1971).[3] This Court, although it has recognized the difficult realities in criminal defense representation, has nonetheless insisted that the form of counsel's response to these situations be consistent with accepted standards of professional conduct. *United States v. Winchester, supra.* It was not in the present case.

**B**

It is now necessary to turn to the responsibility of defense counsel when he *believes* his client who is testifying on the stand has committed or is committing perjury. ABA Standards, *supra,*[4] state:

§ 7.5 Presentation of evidence.

(a) It is unprofessional conduct for a lawyer knowingly to offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses, or fail to seek withdrawal thereof upon discovery of its falsity.

These standards also state:

§ 7.7 Testimony by the defendant.[5]

(a) If the defendant has admitted to his lawyer facts which establish guilt and *the lawyer's independent investigation establishes that the admissions are true* but the defendant insists on his right to trial, the lawyer must advise his client against taking the witness stand to testify falsely.

---

3. In February 1979, the American Bar Association's House of Delegates approved the second edition of *Standards for Criminal Justice, The Defense Function. See* ABA Standards for Criminal Justice, vol. I, ch. 4 (2nd ed. 1980). These provisions cited in the text from the 1971 approved draft are substantially similar. *See* ABA Standards §§ 4-5.2 and 4-3.1, *supra.*

4. *See* n. 3, *supra,* and ABA Standards § 4–7.-5(a), *supra.*

5. This Standard was approved by the House of Delegates of the American Bar Association in

1971. In 1978, a similar Standard was proposed and approved by the ABA Standing Committee on Association Standards for Criminal Justice. ABA Standards Relating to Criminal Justice, Defense Function § 4–7.7 (Tentative Draft Fall 1978). Its submission to the House of Delegates, however, was "deferred until the ABA Special Commission on Evaluation of Professional Standards reports its final recommendations." ABA Standards, § 4–7.7, *supra* (1980). The Standard in its 1971 form is deemed controlling.

(b) If, *before trial,* the defendant insists that he will take the stand to testify falsely, the lawyer must withdraw from the case, if that is feasible, seeking leave of the court if necessary.

(c) If withdrawal from the case is not feasible or is not permitted by the court, *or if the situation arises during the trial and the defendant insists upon testifying falsely in his own behalf,* it is unprofessional conduct for the lawyer to lend his aid to the perjury or use the perjured testimony. Before the defendant takes the stand in these circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner *without revealing the fact to the court.* The lawyer must confine his examination to identifying the witness as the defendant and permitting him to make his statement to the trier or the triers of the facts; the lawyer may not engage in direct examination of the defendant as a witness in the conventional manner and may not later argue the defendant's known false version of facts to the jury as worthy of belief and he may not recite or rely upon the false testimony in his closing argument.

(Emphasis added.)

During the defense-requested session outside the hearing of the members, the following colloquy occurred:

MJ: Defense counsel.

DC: Your Honor, I believe if I were to make an offer in support of the accused's story that I would be remiss in my duties, and·if you wish the defense to use the defense of alibi *and for me to call witnesses and interview them* —

MJ: I do not. I understand.

DC: —I request to be excused from this case.

MJ: No, I understand that problem, Counsel. I understand that problem completely.

DC: In any event, Your Honor, I wish to be excused from the case.

MJ: You do?

DC: Well, Your Honor, I have done what I can to represent the accused. Right now I don't feel that there's any problem, but if you're going to suggest that I violated the rules on alibi and what have you—

MJ: No, no; by no means, by no means, Counsel. I'm not suggesting that at all. I understand that the testimony of the accused was of his own doing—

DC: Yes, Your Honor.

MJ: —and that you asked him no questions and had absolutely nothing to do with that.

DC: And I think the case can just move ahead if you hadn't brought up that particular thing.

MJ: Well, the reason is, that the accused is suggesting that he wasn't there at that time: Is that what—?

Acc: *Yes, sir, I am.*

MJ: The accused says he wasn't there at that time. That means that the defense of alibi is, by the accused's own words, in—

DC: Can we see whether or not the trial counsel will waive the notice as to the defense of alibi. I did tell them that I didn't think the alibi would apply; last evening he asked me, and I told him all the various things that I could think of that might apply.

MJ: Well, I think the correct thing to do at this point in time—

DC: Maybe if the members want to call these people: Skinner or other people—

MJ: I think the correct thing to do at this point in time is to permit the trial counsel, if he desires, a continuance to look into this alibi allegation.

TC: Your Honor, at this time I don't know that I'm going to need a continuance but I would ask for about a five-minute recess to verify some information.

MJ: All right. So you may be able to go ahead·and meet this allegation headon now?

TC: Yes, Your Honor.

MJ: That may solve the problem. Let's see what the trial counsel can do here. I certainly understand, Counsel, completely that you had absolutely nothing to do with this story that the accused has brought before us.

The Court is in recess.

(Emphasis added.)

■ On the record before us, it is clear that defense counsel attempted to comply with ABA Standards § 7.5 by requesting permission to withdraw from this case only after appellant testified in this case. Such belated action in the present case must be considered untimely. ABA Standards § 7.7(b). The manner in which he permitted appellant to testify and his statements as to his personal belief concerning the nature of this testimony indicate that he was not caught by surprise. *See* ABA Standard § 7.7(c). Moreover, his statements on the record further indicate that he had not yet made a complete investigation including the interview of appellant's purported alibi witnesses prior to informing the military judge of his conflict in professional duties. ABA Standards §§ 4.1 [6] and 7.7(a), *supra*. Finally, as earlier indicated, his statements before the members also tended to create the impression that his client was testifying falsely. ABA Standards § 7.7(c), *supra*. Such conduct, no matter how well intentioned, failed to adequately protect appellant's right to present his defense.

### C

■ The military judge did not ask appellant whether he wished this defense counsel removed and new counsel appointed. Appellant, who was an active participant at trial and at the Article 39(a) 10 U.S.C. § 839(a) session did not request his removal. The military judge also did not expressly rule on the request by the defense counsel that he be excused. The Court of Military Review determined it was error for the military judge not to inquire into the accused's desires. This was a correct decision. *See United States v. Davis,* 3 M.J. 430, 434 (C.M.A.1977); *United States v.*

*Graves,* 1 M.J. 50 (C.M.A.1975); *see also United States v. Young,* 482 F.2d 993 (5th Cir.1973); *United States v. Calabro,* 467 F.2d 973 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973); and *Brown v. Craven,* 424 F.2d 1166 (9th Cir.1970). Thus, in this instance, it was error for the military judge to fail to inquire *sua sponte* whether appellant wanted new counsel.

### D

■ The final question which must be addressed is whether appellant was denied effective assistance of counsel. *See generally United States v. Rivas,* 3 M.J. 282 (C.M.A.1977). The preceding parts of this opinion delineate the failures of defense counsel to adequately adhere to accepted standards of professional conduct. In the context of this case, these failures were intimately related to appellant's defense at court-martial and occurred at the critical point in the proceedings. *Id.* at 289; *United States v. Winchester, supra.* The military judge, who had the power and the opportunity to correct this situation at the trial level, failed to act to protect appellant's right to a fair trial. Upon this record, one can only conclude that fair risk existed that appellant was prejudiced by such errors. *Cf. Shepherd v. Hunter,* 163 F.2d 872 (10th Cir.1947).

The decision of the United States Air Force Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

EVERETT, Chief Judge (concurring in the result):

Immediately after the Government rested, defense counsel stated: "At this time the accused would like to take the stand and tell his side of the story," whereupon appellant was sworn and answered identifying questions asked by the trial counsel. Then the military judge remarked: "Pro-

6. *See* n. 3, *supra,* and ABA Standard 4 4.1,     *supra.*

ceed. Oh, you would just like to tell your story? All right." Thereupon appellant gave an uninterrupted narrative which occupies fifty-nine lines in the record of trial. At the conclusion thereof, the military judge stated: "Trial counsel. Your witness." There followed cross-examination by the trial counsel, after which—without inquiring if the defense counsel had any questions—the judge invited questions from the court members. The ensuing questions and answers occupy about three pages of the record of trial. Next, the judge asked if trial counsel had any further questions; at the end of the recross-examination, there occurred the discussion of alibi which is quoted in the principal opinion. 14 M.J. 322, 324–325.

Since defense counsel, who was active during the other portions of the trial, remained completely silent during all of these events and was not even invited by the judge to pose questions to appellant, it seems clear that (a) defense counsel believed his client's testimony would be false; (b) he was seeking to perform his professional responsibility not to abet the commission of perjury[1]; and (c) he had in some way alerted the military judge to his problem. Of course, the record of trial does not reveal on what basis defense counsel reached his own conclusion that Radford's version of events was false or whether he had made any effort to withdraw as counsel.

As the judge obviously was well aware of defense counsel's difficult position, he should have made every effort not to exacerbate it. Instead, by discussing in open court the absence of notice of an alibi defense,[2] he helped highlight the divergence of views between appellant and his counsel. Perhaps the occurrences up to this point "amounted to such an unequivocal announcement to the fact finder" of the defense counsel's disbelief in Radford's testimony "as to deprive appellant of due process." See Lowery v. Cardwell, 575 F.2d 727, 730 (9th Cir.1978).[3]

In any event, at some point in these rather unusual proceedings the military judge became subject to a duty to determine whether the trial could properly continue in light of the conflicting positions taken by appellant and his lawyer.[4] The Court of Military Review concluded, "When counsel requested withdrawal from the case, the military judge should have inquired if the accused wished to proceed with his appointed counsel." 9 M.J. 769, 772 (1980). The dissent agrees "that the military judge, in the face of defense counsel's request to be excused, should have conducted an inquiry of the accused to determine whether there had been an irreconcilable conflict between them which might impair defense counsel's ability to adequately provide assistance to the accused." 14 M.J. 322, 330 (footnote omitted). However, both Judge Cook and the court below take the view that this failure was nonprejudicial.

In that respect, I cannot subscribe to their position. Perhaps, in a *DuBay* hear-

---

1. *See ABA Standards, The ·Defense Function §§ 5.2 and 3.1 (1971)*. These same standards, with minor changes in wording, were approved by the ABA Standing Committee on Association Standards for Criminal Justice as Standards 4–5.2 and 4–3.1, and later adopted by the House of Delegates in February, 1979. Standard 4–7.7, (Testimony by the defendant) initially was adopted by the ABA House of Delegates in 1971; but a revision approved by the Committee was not adopted by the House in 1979. Editorial Note to Standard 4–7.7, ABA Standards for Criminal Justice, vol. I, p. 4.95 (2d ed.1980).

2. The local rules applicable in the Judicial Circuit where the case was being .tried called for notice of alibi defenses; but it might be ques-

tioned whether under these rules an accused must give notice of an intent to establish alibi solely by his own testimony, as appellant attempted to do in the case at bar. Notice of alibi defenses would seem an excellent subject *for uniform treatment by the Manual for Courts-Martial*, rather than for diverse treatment in local rules.

3. In *Lowery* Circuit Judge Hufstedler preferred to rest the decision on the appellant's Sixth Amendment right to effective assistance of counsel.

4. Obviously, the judge would have been reluc*tant to declare a mistrial, since he had previously done so in this same case.*

ing[5] the record of trial might be supplemented by additional facts which would disprove that appellant had been prejudiced by the judge's failure to make the appropriate inquiry. However, in light of all the circumstances, I do not believe it would be worthwhile for our Court to allow the Government an opportunity to salvage the conviction by remanding the case to the trial level for a *DuBay* hearing. Instead, I must join in setting aside the conviction.

COOK, Judge (dissenting):

I am not at all averse to application of the ABA Standards to military justice practice, but I have cautioned that such standards cannot be applied mechanically as a ground for reversal of an otherwise valid conviction. *See* my separate opinion in *United States v. Heard,* 3 M.J. 14, 25 (C.M.A.1977). Here, the majority's identification of appropriate ABA Standards for application to military practice is only part of the inquiry required. The Court must examine the record of trial in its entirety to determine whether the accused was deprived of effective assistance of counsel, in violation of the Sixth Amendment, and whether he was deprived of a fair trial, in violation of the due-process protection accorded by the Fifth Amendment. *United States v. Clayborne,* 509 F.2d 473 (D.C.Cir.1974); *United States v. Young,* 482 F.2d 993 (5th Cir. 1973); *Thornton v. United States,* 357 A.2d 429 (D.C.1976); *Kime v. Brewer,* 182 N.W.2d 154 (Iowa 1970); *see also Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Brooks,* 2 M.J. 102 (C.M.A.1977).

My examination of the record, which covers two trials, leads me to conclude that the accused received a vigorous and effective defense by his counsel. *United States v. Young, supra* at 996. The case against the accused was largely dependent upon the testimony of an informer. At both trials, counsel conducted a spirited cross-examination of the informer and the other prosecution witnesses; he argued cogently against evidence of uncharged misconduct, which came from an answer by a prosecution witness in open court, and succeeded in securing a mistrial. At the second trial, counsel challenged an additional charge and obtained its dismissal by the trial judge; he conducted a thorough *voir dire* of the court members and succeeded in having challenges for cause sustained; he resisted the introduction of prosecution exhibits and managed to exclude a memorandum of a conviction from a British magistrates' court.[1] Considering the record as a whole, defense counsel conducted himself in an able and professional manner. The question of the adequacy of his representation was raised for the first time on appeal. Accused did not specifically complain of his representation at trial; in fact, aside from one statement made to the military judge during a closed session, accused appears to have willingly cooperated and to have been well-satisfied with his counsel throughout the case.

As to the matter highlighted by the majority, it appears that defense counsel did not anticipate the extent of the testimony to be presented by the accused. At the conclusion of the prosecution's case, defense counsel informed the court that "the accused would like to take the stand and tell his side of the story." Accused proceeded to do so in a narrative manner, without participation by the defense counsel. Only toward the end of the narrative did accused testify that he got off work at 5:00 p.m., and that he had dinner with a friend, showered, and accompanied the friend to a British pub later in the evening. He did not specifically, during the testimony-in-chief, relate his actions to the times specified by the informer as to when the sale of hashish took place. He did, however, deny outright selling the hashish to the informer.

---

5. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). *See also United States v. Vietor,* 10 M.J. 69 (C.M.A.1980); *United States v. Killebrew,* 9 M.J. 154 (C.M.A.1980).

1. The fact of accused's conviction was used by trial counsel on cross-examination to impeach the accused's credibility.

Upon cross-examination by the trial counsel, the accused went into further detail and stated that he did not get off work until after 5:00 p.m. After that, in responding to questions from the court, he became more specific as to times during which he was in the company of his friend. Also during this testimony, there was evidence presented as to when he had turned in his tool box on the flight line. It was only after a further recross-examination by trial counsel that the military judge raised the point that the defense was apparently offering an alibi defense and asked if it had given notice to the prosecution in advance, as required by local court rule. Defense counsel responded that the accused was not raising an alibi defense as to the specific times related by the informer. When the military judge asked if the accused were not denying that he was somewhere else in contradiction to the informer's testimony, defense counsel requested and was granted a hearing out of the presence of the court members. It was at this point that the defense counsel indicated that he could not ethically present an alibi defense and told the judge that if he were forced to use the defense of alibi and call witnesses in support of it, he wished to be excused.

I agree that the military judge, in the face of defense counsel's request to be excused, should have conducted an inquiry of the accused to determine whether there had been an irreconcilable conflict between them which might impair defense counsel's ability to adequately provide assistance to the accused;[2] however, I do not believe the failure to do so mandates reversal in light of defense counsel's action following this interchange. *Thornton v. United States, supra; Brown v. United States,* 264 F.2d

363, 367–69 (D.C.Cir.1959) (Burger, J., concurring in part), *cert. denied,* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959).

When the prosecution brought in evidence concerning the records of accused's squadron which reflected times for returning tool boxes, defense counsel strongly resisted the inferences which might be drawn by the factfinders from the evidence showing the accused had turned in his toolbox at 4:00 p.m. on the day in question. When the prosecution called witnesses who attempted to testify as to the duty hours and the normal procedures for tool box turn-in within the squadron, defense counsel was able, through cross-examination, to bring out the fact that none of the witnesses could specifically testify as to when the accused left the flight line on the particular day. Further, in rebuttal, the defense called a witness to testify to the fact that the tool boxes were often turned in before the users went off duty because of the shortage of tools in the squadron. When the prosecution brought in witnesses to testify as to the accused's reputation for truth and veracity, defense counsel materially minimized the effect of their testimony by clever cross-examination. In closing, defense counsel argued against the credibility of the informer and in support of the lack of specificity as to times related by the prosecution witnesses. In total, it can fairly be said that he did use "all honorable means to see that justice ... [was] done." *United States v. Clayborne, supra* at 478; *United States v. Mitchell,* 16 U.S.C.M.A. 302, 36 C.M.R. 458 (1966). I believe that he provided adequate and effective assistance to the accused throughout the trial. *Thornton v. United States* and *United States v. Young,* both *supra.*

---

**2.** When the question of continued effective assistance of counsel is voiced, the Court has a duty to inquire into its basis. *Thornton v. United States,* 357 A.2d 429 (D.C.1976); *Brown v. United States,* 264 F.2d 363 (D.C.Cir.1959), *cert. denied,* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959). The trial judge is required to ascertain the basis of the request and to rule on the reasons rather than on a naked request. *Thornton v. United States* and *Brown v. United States,* both *supra.* There must be good cause for change of counsel after trial has

begun, such as conflict of interest, a complete breakdown of communications, or an irreconcilable conflict which leads to an apparently unjust verdict. *United States v. Calabro,* 467 F.2d 973 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). However, the decision whether to appoint a different counsel is within the sound discretion of the trial judge, absent a clear Sixth-Amendment violation. *United States v. Young,* 482 F.2d 993 (5th Cir.1973). *See United States v. Evans,* 1 M.J. 206 (C.M.A.1975).

Turning to whether the accused received a fair trial, we must examine the possibility of prejudice to the accused which flowed from the military judge's announcement before the triers of fact that the accused had presented "the sudden introduction of the defense of alibi." It is clear that counsel cannot indicate before the triers of fact his belief that his client is committing perjury. *See United States v. Winchester,* 12 U.S.C. M.A. 74, 30 C.M.R. 74 (1961); *Lowery v. Cardwell,* 575 F.2d 727 (9th Cir.1978). Here, all defense counsel did before the triers of fact was to characterize the accused's narrative testimony as not raising an alibi as to the specific times. However, this statement of the defense counsel must be read in context with the later declaration of the military judge in deciding whether the accused was denied a fair trial because of any unfair implications as to the veracity of his testimony. I note that the trial counsel went to considerable effort to disprove the accused's assertions that he was not in his room at the time the informer said he purchased the hashish from him. In point of fact, a considerable portion of the trial was taken up with this issue. Considered in its totality, I do not believe that either the defense counsel's comments or the trial judge's statement could have conveyed the impression to the court members that the accused had lied on the stand. Instead, the record indicates all the trial participants considered this a factual issue which the Government was required to disprove as part of the overall burden of proof beyond a reasonable doubt. The issue of alibi was argued by both counsel in closing arguments on the findings and was instructed upon by the military judge correctly prior to the closing of the court for deliberation. The possible indication of the weight given by the court members to the aforementioned remarks is found in the fact that the court acquitted the accused of the specification alleging possession of hashish and convicted only on the specification of sale of hashish. Obviously some members of the court must have given some credit to the accused's testimony to have arrived at such a verdict.

Applying the tests that I believe are mandated here, I am convinced that the accused was not denied effective representation by counsel; I am also convinced that he received a fair trial. Accordingly, I would affirm the decision of the United States Air Force Court of Military Review. *See* Articles 59(a) and 67(d), Uniform Code of Military Justice, 10 U.S.C. §§ 859(a) and 867(d), respectively.