**Jacqueline LOWERY, Appellant,**

v.

**Harold J. CARDWELL, Superintendent, Arizona State Prison, Appellee.**

**No. 75–2341.**

United States Court of Appeals, Ninth Circuit.

**May 19, 1976.**

H. Allen Gerhardt, Jr. (argued), Federal Public Defender, Phoenix, Ariz., for appellant.

Frank T. Galati (argued), Phoenix, Ariz., for appellee.

## OPINION

Before DUNIWAY, KILKENNY and SNEED, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was found guilty in a court trial of the crime of second degree murder in the Superior Court of Maricopa County, Arizona, on September 20, 1973, and was sentenced to serve not less than ten or more than twenty years in the Arizona State Prison. Her conviction was affirmed by the Arizona Supreme Court, *State v. Lowery*, 111 Ariz. 26, 523 P.2d 54 (1974). She then sought habeas relief in the district court under 28 U.S.C. § 2254. Her petition was denied without a hearing on the ground that the errors, if any, were harmless beyond a reasonable doubt under the doctrine taught by *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). She appeals. We reverse.

## THE EVIDENCE

A fair summary of the evidence reveals that appellant was a participant in an all night 4th of July celebration which developed into a drunken brawl in the early hours of July 5, 1973. Participants in the brawl at McGee's drinking establishment in Phoenix aside from appellant were, among others, the decedent Houston, and witnesses, Childres and Phillips.

Childres, the state's principal witness, testified he saw the decedent and appellant walk toward the station wagon in which the police found the decedent's body. This was probably around 4:00 A. M. He said she went to the driver's side of the vehicle, the side away from him. The decedent got in the automobile and appellant, the witness says, stood outside the vehicle for seven or eight minutes. While she was standing there, he heard noises which sounded like firecrackers. However, this was not unusual in that firecrackers had been popping off all night. Some minutes later, she walked toward the witness Phillips who was evidently drunk and lying on top of his car. Childres was of the impression that appellant at the time had a small caliber pistol with a brown handle and of a bluish color in her hand, but conceded that the gun was on her side away from him. He did not observe a purse in her hand. Evidently, the witness went back into McGee's shortly after the incident and did not again go outside until someone reported a dead man in the car around 5:00 A. M.

Because Childres is the only witness whose testimony would in any way directly connect appellant to the crime, his testimony is of the utmost importance and must be closely scrutinized. When shorn of embellishment, it amounts to nothing more than that he saw appellant go with decedent to the vehicle in which decedent's body was found some time later and that after hearing noises that sounded like firecrackers, he saw appellant walk away from the vehicle with what appeared to be a small caliber gun in her hand. Childres' testimony, to some extent, is disputed by the witness Phillips. The witness Phillips saw a purse, but did not see a gun in appellant's hand. Even Childres was unsure of what he saw. We quote: ". . . I am not positive that I didn't see a purse in her hand because I wasn't noticing one." Childres said Phillips was not drunk. Phillips said he was so drunk he was not very clear about

what was going on. When first interviewed by police, Childres said he had heard the appellant and decedent arguing over money at the automobile in which decedent was killed. He denied this on the witness stand.

The witness Johnson testified that some time during the preceding summer he had given to appellant a .22 caliber hand gun with a brown handle and a blue finish and that she had not returned it. The weapon involved in the killing was never found. A police officer, not a ballistics expert, testified that one of the slugs taken from decedent's body was a .22 caliber, but that the segment of another slug was so small that he could not make a determination. Strangely enough, an examination was made of appellant's hands the morning of the shooting to test for nitrate particles to determine if she had recently fired a weapon. These tests were never completed. One witness estimated that the elapsed time between when appellant was last seen in McGee's and the time the body was discovered was approximately one-half hour to 45 minutes.

When arrested by a police officer on the morning of July 5th, appellant admitted drinking a lot of beer. She denied shooting the decedent and when shown a photograph of the victim, she repeatedly queried: "I did that?" The police officer explained that this was in the nature of a question and was not a statement that she did the shooting. To the contrary, she positively denied having a gun and said she had last fired one in 1958. At the trial, as evidenced by the footnote,[1] she denied that she walked out of McGee's with the decedent and denied shooting him.

\* \* \* \* \* \*

In summary, there is evidence: (1) that decedent was shot and killed while sitting behind the steering wheel of his automobile, apparently by someone outside the left car window, (2) appellant was seen standing in that position, (3) shots or exploding firecrackers were heard by two witnesses while appellant was in that area. Shortly thereafter appellant and the witnesses left that scene. The decedent was discovered dead in the automobile approximately one-half hour later. He had last been seen alive about 4:15 A. M. At 5:30 A. M. the blood on his shirt was dry. There is evidence that appellant had been given a .22 caliber handgun the previous summer and that decedent was killed with a .22 caliber gun. This evidence is denied by the appellant.

## THE TRIAL

After the prosecuting attorney rested, the defense called appellant as its only witness. Apparently, appellant's trial counsel thought appellant was going to admit killing the decedent. Counsel was apparently proceeding on the theory that she would say she was so intoxicated she didn't know what she was doing. This is mere speculation in that there is no record to support it. In any event, he called her as a witness.

Under oath, appellant denied that she walked outside the McGee tavern with the decedent or that she went with him to the automobile. Moreover, she flatly denied that she shot him. Immediately, defense counsel asked for and received a recess. The court, the prosecuting attorney, and appellant's counsel retired to chambers. There, in the absence of appellant, her counsel moved to withdraw from the case. When asked to state his reason, he responded: "I cannot state the reason." After denying the motion, the court held an "off-the-record" discussion with the prosecuting

1. "Q. Did you see him [Decedent] go to his car?
A. No. I just—I was just sitting in the front just, you know, drinking and socializing and everything."
\* \* \* \* \* \*
"Q. Did you walk out after him?
A. No.

Q. Did you at any time go to his car?
A. No.
Q. Did you shoot him?"
\* \* \* \* \* \*
"A. No.
Q. You did not do so?
A. No."
\* \* \* \* \* \*

attorney and counsel for the appellant. Shortly thereafter the court and counsel returned to the courtroom and to the presence of appellant, at which time the court announced, "The record may show the presence of defendant." Appellant's counsel did not attempt to have appellant elaborate on her denials. Instead, he stated "I don't have any further questions."

Without mention of appellant's positive denials that she was with the decedent or had shot him, the prosecuting attorney then proceeded to cross-examine her on a second degree murder conviction which she had received some years prior in Texas. Both the prosecution and defense then rested.

The final argument of appellant's counsel consumed approximately five minutes. Nowhere in the argument did he even mention the appellant's denial of participation in the shooting. To the contrary, his argument implied that she probably killed the decedent, but that she should not be held responsible for first degree murder on account of her intoxication.

## ISSUES

I. Did the Fourteenth Amendment due process provisions mandate the presence of the appellant in chambers at the time of her attorney's motion to withdraw and at the time of the "off-the-record" conference?

II. Did the Sixth Amendment give the appellant the right to be present and confront those who might have made statements against her at the time of her attorney's motion to withdraw and at the time of the "off-the-record" conference?

III. Did appellant's counsel's conduct, in the light of the special circumstances of the case, measure up to the requirement of the Sixth Amendment that the appellant be provided with the "assistance of counsel" for her defense?

## DISCUSSION

### I and II

■ In this factual background, we believe that Issues No. I and II should be treated together. At best the state's case against appellant is shadowy. We hold that the evidence does not remotely approach the overwhelming character of proof required to invoke the doctrine of *Harrington v. California, supra,* and its offspring.

■ On this record, we are convinced that fundamental fairness may have mandated the presence of the appellant in the court's chambers at the time her attorney attempted to withdraw and at the time of the "off-the-record" conference. The record is clear that appellant knew nothing whatsoever of what occurred in the court's chambers. For that matter, she did not know that her attorney had attempted to withdraw. The Supreme Court decisions in *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1, 6 (1975), and *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), require that an accused be present at *all stages* of the proceedings where fundamental fairness might be thwarted by her absence. See also *Faretta v. California,* 422 U.S. 806, 816, 95 S.Ct. 2525, 2531, 45 L.Ed.2d 562, 571 (1975).

Appellant testified that she had nothing to do with the commission of the crime. Immediately thereafter her counsel asked for a recess. In appellant's absence, he asked to withdraw from the case and immediately thereafter the court and counsel held a conference which was not reported. The appellee has not attempted to supplement the record, by affidavit or otherwise, as to what actually occurred at the time of the "off-the-record" conference.

Although it is our duty to decide whether fundamental fairness required appellant's presence at the session in chambers, we are left in limbo as to what actually occurred. The motion of appellant's attorney to withdraw suggests that her testimony on the witness stand may have differed from what she had previously told him. However, this is pure speculation. It is entirely possible that he had other reasons to suggest a withdrawal. Above and beyond that, we are absolutely in the dark as to what occurred in the "off-the-record" conference.

What was said in the conference might have had nothing whatsoever to do with appellant's case and might not have constituted a "stage" of the proceeding where fundamental fairness required the appellant's presence. If her fundamental rights were involved in the proceedings occurring in the chambers, she might well be entitled to appropriate relief.

We do not reach appellant's contention number III. It is our impression that appellant's counsel at the time of the trial and, in particular, at the time of his attempted withdrawal, was conscientiously attempting to conform to and comply with the Code of Professional Responsibility of the American Bar Association. However, there is nothing in the present record to affirmatively support this impression.

## CONCLUSION

Because we cannot resolve these issues on the record before us, we vacate the judgment below and remand with directions to hold a hearing on (1) the reasons behind the attorney's motion to withdraw, (2) the detail of what occurred during the "off-the-record" conference, (3) the reason, if any, why appellant's attorney did not argue to the court her contention that she did not shoot the decedent, and (4) such other subjects as may be appropriate to the discovery of what occurred during the period under scrutiny.

If the record in the hearing on remand, when analyzed in the light of the above authorities, shows that appellant's presence was required at the in chambers conference, then the district court shall issue an appropriate writ of habeas corpus. Otherwise, he shall dismiss appellant's petition from which dismissal appellant may again prosecute an appeal, at which time we shall consider the entire record. Additionally, if none of the witnesses is in a position to recall what occurred in the chambers' conference or otherwise supply the evidence above required, the district judge shall issue an appropriate writ of habeas corpus.

VACATED AND REMANDED.