Jacqueline LOWERY, Plaintiff-Appellant,

v.

Harold J. CARDWELL, Superintendent, Arizona State Prison, Defendant-Appellee.

No. 76-3624.

United States Court of Appeals, Ninth Circuit.

May 22, 1978.

Gerald F. Moore, Phoenix, Ariz., for plaintiff-appellant.

Bruce E. Babbitt, Atty. Gen., Phoenix, Ariz., for defendant-appellee.

Before MERRILL and HUFSTEDLER, Circuit Judges, and BURNS,* District Judge.

MERRILL, Circuit Judge:

This habeas corpus appeal is before us for the second time. The problem it presents is that of accommodating a criminal defendant's rights to fair trial and due process with the ethical duty of defense counsel to refrain from lending support to what he believes to be false testimony.

Appellant was charged by the State of Arizona with first degree murder. She pleaded not guilty and trial was had to the court without a jury. Testimony established that the victim's body had been found seated in his car, parked in front of a cafe. He had been shot twice at close range. The state's principal witness testified that he had seen appellant walk to the car with the deceased and stand on the far side of the car—the driver's side—while the deceased entered the car. Sounds similar to those of the popping of fire crackers had then been ˙heard. The testimony is dis-

---

* Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

cussed at greater length in our opinion rendered on the prior appeal. 535 F.2d 546, 547–48 (1976).

The appellant took the stand and testified in part as follows:

"Q * * * You heard Sarge's testimony that you walked outside with him?

A No, I didn't.

Q Did you walk out after him?

A No.

Q Did you at any time go to his car?

A No.

Q Did you shoot him?

A Did I what?

Q Shoot this man.

A [Witness shakes head.]

Q Do you understand my question?

A Yes. You asked me did I shoot him.

Q Yes.

A No.

Q You did not do so?

A No."

Counsel then requested a recess which was granted. The trial transcript discloses that in chambers, without appellant being present, the following occurred:

"MR. LYDING: I'd like to put on the record that I move to withdraw.

THE COURT: State your reason.

MR. LYDING: I cannot state the reason.

THE COURT: Okay. The motion will be denied. Off the record.

[Whereupon, an off-the-record discussion was held.]"

Back in court counsel stated that he had no further questions of appellant. In closing argument to the court he made no reference to appellant's testimony to the effect that she had not accompanied the deceased to his car and had not shot him. Instead counsel argued that the state's case was subject to reasonable doubt and that if the court should find that appellant had pulled the trigger, still the case was not one of first degree murder.

The court found appellant guilty of second degree murder. The Supreme Court of Arizona affirmed. *State v. Lowery*, 111 Ariz. 26, 523 P.2d 54 (1974). After exhausting state remedies appellant sought habeas corpus in the District Court for the District of Arizona. The writ was denied and the first appeal to this court was taken.

The question then addressed by us was whether appellant's absence at the time of counsel's motion to withdraw had operated to deprive her of due process. The case was remanded to the district court "with directions to hold a hearing on (1) the reasons behind the attorney's motion to withdraw, (2) the detail of what occurred during the 'off-the-record' conference, (3) the reason, if any, why appellant's attorney did not argue to the court her contention that she did not shoot the decedent, and (4) such other subjects as may be appropriate to the discovery of what occurred during the period under scrutiny." 535 F.2d at 550.

At the hearing on remand it was established that counsel had sought to withdraw because he believed appellant was lying; that for the same reason he had failed further to interrogate appellant or to argue her assertion that she had not shot the deceased; that nothing had occurred during the off-the-record period except an inquiry from the court as to how long trial would take. On the basis of this record the district court again dismissed appellant's petition for a writ of habeas corpus. Supplemented by the transcript of that hearing, the case is back before us.

■ In our judgment nothing occurred off the record during the chambers conference that rendered appellant's absence constitutionally improper. The subject of the off-the-record conference was purely procedural and appellant's presence was not required. *E. g., United States v. Easley*, 505 F.2d 184, 185 (9th Cir. 1974); *United States v. Williams*, 455 F.2d 361, 365 (9th Cir.), *cert. denied*, 409 U.S. 857, 93 S.Ct. 140, 34 L.Ed.2d 102 (1972); *United States v. Alper*, 449 F.2d 1223, 1232 (3d Cir. 1971), *cert. denied*, 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972). The due process question that remains—one that on the prior appeal we expressly refrained from reaching—is whether the motion to withdraw, made when it was and under the circum-

stances then existing, served to deprive appellant of fair trial. We conclude that it did.

■ The problem presented is that which arises when defense counsel, in the course of a criminal trial, forms the belief that his client's defense is based on false testimony. We start with the basic proposition that if, under these circumstances, counsel informs the fact finder of his belief he has, by that action, disabled the fact finder from judging the merits of the defendant's defense. Further, he has by his action openly placed himself in opposition to his client upon her defense. The consequences of such action on the part of counsel, in our judgment, are such as to deprive the defendant of a fair trial. If in truth the defendant has committed perjury (a fact we do not know in this case) she does not by that falsehood forfeit her right to fair trial.

■ The question presented, then, is whether what here occurred amounted to such an unequivocal announcement to the fact finder as to deprive appellant of due process. In our judgment it must be said that it did. The judge, and not a jury, was the fact finder. From the testimony of appellant that we have quoted, from the fact that the examination of appellant ceased abruptly at that point with a request for a recess, from the making of the motion to withdraw and counsel's statement to the court that he could not state the reason for his motion, the only conclusion that could rationally be drawn by the judge was that in the belief of her counsel appellant had falsely denied shooting the deceased.

■ The result on these unusual facts is not inconsistent with the principles of professional responsibility under ethical standards as they are generally recognized today[1] and does not expose counsel to a charge of subornation of perjury. The American Bar Association Code of Professional Responsibility states only that "In his representation of a client, a lawyer shall not * * * knowingly use perjured testimony or false evidence." Disciplinary Rule 7–102(A)(4). The ABA Defense Function Standards[2] cast light on the rule and deal with the subject at greater length, although they do not deal specifically with trial before a judge without a jury or with the case where counsel is surprised by perjury in the course of examination of his client.[3]

1. Much has been written on the subject of counsel's professional responsibilities when confronted with client perjury or intent to commit perjury, and scholars differ strongly on some of the questions presented. See Wolfram, *Client Perjury*, 50 So.Cal.L.Rev. 809 (1977) (and articles cited therein). However, we feel that the ABA standards set forth in the ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Approved Draft 1971) (hereinafter the "Defense Function Standards"), discussed *infra*, can be said to represent an authoritative consensus.

2. The Standards were adopted by the ABA House of Delegates in 1971 and are designed to be compatible with the Code. See Wolfram, *supra*, at 824.

3. Section 7.7 of the Standards states:
   "Testimony by the defendant.
   (a) If the defendant has admitted to his lawyer facts which establish guilt and the lawyer's independent investigation establishes that the admissions are true but the defendant insists on his right to trial, the lawyer must advise his client against taking the witness stand to testify falsely.

   (b) If, before trial, the defendant insists that he will take the stand to testify falsely, the lawyer must withdraw from the case, if that is feasible, seeking leave of the court if necessary.
   (c) If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises during the trial and the defendant insists upon testifying falsely in his own behalf, the lawyer may not lend his aid to the perjury. Before the defendant takes the stand in these circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner without revealing the fact to the court. The lawyer must confine his examination to identifying the witness as the defendant and permitting him to make his statement to the trier or the triers of the facts; the lawyer may not engage in direct examination of the defendant as a witness in the conventional manner and may not later argue the defendant's known false version of facts to the jury as worthy of belief and he may not recite or rely upon the false testimony in his closing argument."

■ The Standards, in brief, would appear to require that when, in the course of trial, counsel is surprised by his client's perjury he should not act to advance it. However, there is no requirement that he seek to withdraw, since, during trial, that course is likely not to be feasible. The Standards seem quite sensibly to assume that counsel will not be expected to act in such a fashion as to disclose his quandary to the fact finder.[4]

■ Thus it does not follow from our holding that a passive refusal to lend aid to what is believed to be perjury in accordance with the Defense Function Standards would violate due process. In our view, mere failure to pursue actively a certain course of defense, which counsel ethically is precluded from actively pursuing, cannot be said to constitute denial of fair trial. While a knowledgeable judge or juror, alert to the ethical problems faced by attorneys and the manner in which they traditionally are met, might infer perjury from inaction, counsel's belief would not appear in the clear and unequivocal manner presented by the facts here. There may be many reasons for failure actively to pursue a particular line of defense. And in the weighing of competing values in which we are engaged—the accommodation we specified at the outset of this opinion—the integrity of the judicial process must be allowed to play a respectable role; the concept of due process must allow room for it.

The distinction we draw is between a passive refusal to lend aid to perjury and such direct action as we find here—the addressing of the court in pursuit of court order granting leave to withdraw. By calling for a judicial decision upon counsel's motion in a case in which the judge served as fact finder, this conduct affirmatively and emphatically called the attention of the fact finder to the problem counsel was facing.[5]

That this is an unhappy result cannot be denied. Trial counsel is to be commended for his attention to professional responsibility.[6] Nor can criticism be leveled at the trial judge for his confidence in his ability to remain unaffected by the motion to withdraw. We are acutely aware of the anomaly presented when mistrial must result from counsel's bona fide efforts to avoid professional irresponsibility. We find no escape, however, from the conclusion that fundamental requisites of fair trial have been irretrievably lost. Whether a just result nevertheless was reached would be a futile and irrelevant inquiry.

4. An ABA panel, which included then Circuit Judge Warren E. Burger, in commenting on a hypothetical case submitted to it in 1966, anticipated the Standards on the question of the proper method of dealing with the client who insists on taking the stand to commit perjury. Judge Burger states:

"If in those circumstances the lawyer's immediate withdrawal from the case is either not feasible, or if the judge refuses to permit withdrawal, the lawyer's course is clear: He may not engage in direct examination of his client to facilitate known perjury. He should confine himself to asking the witness to identify himself and to make a statement, but he cannot participate in the fraud by conventional direct examination. Since this informal procedure is not uncommon with witnesses, there is no basis for saying that this tells the jury the witness is lying. A judge may infer that such is the case but lay jurors will not."

Burger, Standards of Conduct: A Judge's Viewpoint, 5 Am.Crim.Law Q. 11, 13 (1966).

5. The attorney may justifiably desire to establish a record for his own protection in the event that his professional conduct is later questioned. Especially in a case tried to the court, and even in a jury trial:

"* * * if the trial judge is informed of the situation, the defendant may be unduly prejudiced * * * and the lawyer may feel he is caught in a dilemma between protecting himself by making such a record and prejudicing his client's case by making it with the court. The dilemma can be avoided in most instances by making the record in some other appropriate manner, for example, by having the defendant subscribe to a file notation, witnessed, if possible, by another lawyer."

ABA Defense Function Standards § 7.7 Commentary at 277.

6. Problems of ethics are not before us. Our sole concern relates to the requisites of due process and fair trial. Thus, we do not reach such questions as the extent to which counsel should satisfy himself that the testimony of his client is false, or the extent to which he should confer with his client before passively refusing to lend aid to her defense. Of course, we do not condone such misconduct as a deliberate and strategic causing of mistrial.

Reversed and remanded with instructions that the writ issue, unless, within fifteen days, the state shows good cause before the district court why the issuance should be delayed.

HUFSTEDLER, Circuit Judge, specially concurring:

Although I do not disagree with the majority's due process analysis, I would rest the decision on the petitioner's Sixth Amendment right to effective assistance of counsel. The petitioner sustained her burden of proving that counsel failed to render reasonably effective assistance and that failure resulted in the denial of fundamental fairness. (*United States v. Elksnis* (9th Cir. 1975) 528 F.2d 236.)

Under the circumstances that Judge Merrill describes, when defense counsel moved to withdraw, he ceased to be an active advocate of his client's interests. Despite counsel's ethical concerns, his actions were so adverse to petitioner's interests as to deprive her of effective assistance of counsel. No matter how commendable may have been counsel's motives, his interest in saving himself from potential violation of the canons was adverse to his client, and the end product was his abandonment of a diligent defense. (*Cf. McKissick v. United States* (5th Cir. 1967) 379 F.2d 754, 762.)