No. 82-198

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

DEWEY E. COLEMAN,

                              Petitioner,

        vs.

HENRY RISLEY, as Warden of
Montana State Prison et al.,

                        Respondent.

_____

ORIGINAL PROCEEDING:

Counsel of Record:

        For Petitioner:

                Moses Law Firm, Billings, Montana
                Charles F. Moses argued, Billings, Montana

        For Respondent:

                Hon. Mike Greely, Attorney General, argued, Helena,
                Montana
                John Maynard, Assistant Attorney General, argued,
                Helena, Montana
                John S. Forsythe, County Attorney, argued, Forsyth,
                Montana

_____

                        Submitted:  December 1, 1982

                        Decided:  March 25, 1983

Filed: MAR 25 1983

_Ethel M. Harrison_
                        Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Petitioner Dewey Coleman brings a petition for a Writ of Habeas Corpus as an original proceeding, asking this Court to vacate his death sentence and remand his cause for resentencing as to the aggravated kidnapping conviction by a district court judge other than the judge who has twice sentenced him to death.

The petition is denied.

The sole issue before this Court is whether, because the sentencing judge possessed information unavailable to Coleman and his attorney, Coleman was denied his rights to a fair tribunal, to confront witnesses, and to have the effective assistance of counsel, as guaranteed under both the United States Constitution and the Montana Constitution.

Coleman and Robert D. Nank were traveling together on July 4, 1974, from Roundup toward Forsyth, Montana, on U.S. Highway #12 when their motorcycle ran out of gas. At approximately the same time, Peggy Lee Harstad disappeared while driving her car on the same highway. On August 29, 1974, her body was discovered just west of Forsyth on the north side of the Yellowstone River.

On October 24, 1974, motions for leave to file Informations in the District Court, Rosebud County, were requested and granted. The Informations charged each of the men with three counts: Count I, deliberate homicide; Count II, aggravated kidnapping; and Count III, sexual intercourse without consent, inflicting bodily injury. Both men pleaded not guilty to all counts.

On May 7, 1975, the State entered into a written plea bargain agreement with Nank. Under the terms of the agreement, Nank agreed to plead guilty to deliberate homicide and to solicitation to commit sexual intercourse without

2

consent, and further agreed to testify at Coleman's trial in return for the dismissal of the aggravated kidnapping charge.

On May 19, 1975, Coleman's court appointed counsel made an oral offer of a conditional plea of guilty in return for dismissal of the aggravated kidnapping charge. On May 23, 1975, a written offer of a conditional plea of guilty was presented to the court. In this offer, Coleman insisted on maintaining his innocence. The State refused to accept a guilty plea with Coleman maintaining his innocence.

On July 2, 1975, a hearing was held on a motion to allow counsel for Coleman to copy Nank's medical records. Defense counsel explained that Coleman was not present because he was in Billings for a psychiatric evaluation. After a discussion regarding the motion, the State inquired as to the purpose of the mental examination. Defense counsel stated that the purpose of the psychiatric examination was to place Coleman under sodium amytal to see if his recollection and memory could be refreshed. Defense counsel then stated:

"That investigation has been conducted and I believe on the basis of that examination, that my client will want to enter a plea of guilty."

Defense counsel further stated:

"Dr. Harr has called me already this morning, and from the information I have received, it appears that my client's memory has been refreshed and there was participation on his part in the crime."

The transcript shows that the court understood that defense counsel was making a proposition similar to that which Mr. Nank had made. Defense counsel pointed out that Coleman then would be subject to a possible maximum penalty of 100 years on the deliberate homicide and 40 years on the sexual assault, with the count of aggravated kidnapping to be dismissed. Discussion continued between the court and all of the counsel with regard to Coleman's willingness to testify. The State expressed concern that Coleman might be testifying

3

in order to avoid the death penalty even if he might not actually remember the crime. No plea bargain agreement was reached during this hearing on July 2 and the hearing was continued to the following day.

At the continued hearing on July 3, 1975, Coleman was present, as were counsel for the parties. Defense counsel then stated that "we would make an offer to plead guilty under the same terms and conditions as had been accepted by the State with regard to Mr. Nank." The key element of that offer was that it would require a dismissal of the charge of aggravated kidnapping with its potential death penalty. Defense counsel also indicated that Mr. Coleman would be willing to take the stand and make a full disclosure of all facts. Defense counsel also pointed out that he had explained to Mr. Coleman that he was waiving his rights against self-incrimination, the right to confront witnesses, the right to require the State to prove every fact beyond a reasonable doubt and his right to testify in his own defense. Mr. Coleman answered, "Yes", when asked if he would be willing to reconduct the sodium amytal examination in the presence of the court and the prosecuting attorneys. Following an extensive discussion between counsel and the court, the State rejected the plea bargain offer. The State pointed out that there were many questions involved in accepting such a plea in view of the past statements and bargaining between the parties, and because the prosecution felt that at least one of the defendants should go to trial.

After rejection of the plea bargain offer, defense counsel stated:

> " . . . if I have to continue in this case and if we have to try this case, then there is no way in the world I can state to the jury that he is innocent of deliberate homicide and that he's innocent of sexual intercourse without consent, and that he will have to agree that he will testify to his involvement in those acts and activities and he

4

will have to admit them, and that we will remove them as issues in the case. That is the only thing I can do. I have told him this position and I have explained it to him as best I can, and I have indicated to him that if he feels that he's dissatisfied with this, or does not feel that it's a proper position, then of course he can indicate it to the Court. Now that is one problem that I have presented and the only resolution I can make of that, is to do it in that fashion. Now I have explained it the same way I have explained it to Mr. Coleman. He realizes, I presume, the chance that the jury can still find him guilty of aggravated kidnapping under all of the circumstances. I have told him my personal feelings on this. Now -- however, I want the record to be clear that I feel that because of my moral and professional and ethical decisions, that I should be relieved and even though I am -- I may be granted the right by my client and by the Court to proceed with an admission of deliberate homicide and sexual assault without consent, because some other attorney may have different views of how to proceed."

". . .

"The only thing that I can do is attack fully the question of whether they can establish aggravated kidnapping, but that becomes a tremendous problem, because I have to start off with the jury by saying my man committed deliberate homicide and that my man committed sexual intercourse, but I deny that he committed aggravated kidnapping. Now personally I think that Nank's statements in his plea to the court admits that he committed aggravated kidnapping. I mean they drove there, took this girl off by force. They drove her around, and there is not one shred of evidence that Coleman was the perpetrator, because there can't be. There were only three people and one is dead, so there is nothing. It becomes a question of Nank against my man, Mr. Coleman."

THE COURT: "Right now you're well representing the defendant just by that type of argument."

As indicated in the above quotation, defense counsel at no time admitted that Mr. Coleman was guilty of the crime of aggravated kidnapping.

The District Court did not relieve defense counsel of his representation of Mr. Coleman. Upon petition, this Court did relieve him of such representation. Approximately two weeks following the hearing, representation of Mr. Coleman was taken over by his present counsel, who represented him at trial and on the previous appeals.

5

The trial commenced on October 23, 1975, in Yellowstone County and ended on November 14, 1975. A jury returned guilty verdicts on all three counts. On November 21, 1975, the court sentenced Coleman to 100 years on Count I (deliberate homicide); to death by hanging on Count II (aggravated kidnapping); and to 40 years on Count III (sexual intercourse without consent, inflicting bodily injury).

Coleman was resentenced by the same District Judge on July 10, 1978, following the reversal of his sentences on Counts II and III by this Court in State v. Coleman (1978), 177 Mont. 1, 579 P.2d 732. Coleman was resentenced to death by hanging on Count II (aggravated kidnapping) and to 20 years on Count III (sexual intercourse without consent).

The State moved for dismissal of the present Habeas Corpus petition because it does not contain grounds which could not reasonably have been raised in the original or amended petition. Coleman contends the issue could not have been raised previously because the transcript of the July 2 and 3 hearings was not available until February 1982. The State counters that the responsibility of obtaining the entire transcripts rests with the defendant and that he waived further grounds for relief by not raising them previously.

Although this Court does not approve of the dragging out of the appellate process in the instant case, we are aware that "the death penalty is 'qualitative(ly) differen(t)' from other punishments, Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976), and is 'unique in its severity and irrevocability.' Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976). . . ." Sher v. Stoughton (N.D. New York 1981), 516 F.Supp 534, 547. This Court realizes that counsel for Coleman did not obtain the July 2 and 3 transcript until

6

February 1982. We are, however, concerned that counsel long ago should have known what occurred at the July 2 and 3 hearings and that the transcripts were missing. But because the situation is unique, and because this is a capital case, this Court will exercise its discretion and review the merits of the petition despite procedural irregularities.

Coleman bases his argument on the holdings in three cases which he contends are directly on point. He maintains that these cases should control, and should require that the death sentence imposed be vacated, and new resentencing proceedings be had thereon.

The first of these cases is Lowery v. Cardwell (9th Cir. 1978), 575 F.2d 727, a habeas corpus action brought by a state prisoner under a homicide conviction. In Lowery, defendant pleaded not guilty and a trial was held without a jury. During questioning of defendant by his own counsel, counsel abruptly stopped questioning and requested withdrawal from the case. Counsel refused to state reasons for his withdrawal request, but it was later learned that he felt that defendant was lying. The guilty verdict was vacated because the attention of the judge, who was the fact finder, was drawn to the problem counsel was facing which "disabled the fact finder from judging the merits of defendant's defense."

In the present case, Coleman's guilt was determined by a jury after a three week long trial with testimony from 50 witnesses. The jury made the determination as to Coleman's guilt, unlike in Lowery, where the judge made that determination. Coleman contends that the trial judge was the fact finder because he determined if mitigating factors were present for sentencing. A judge acting as a finder of fact in place of a jury is not the same as a judge acting as the one

who determines fact at the time of sentencing. Lowery is not persuasive here.

The second case relied on by Coleman is Gardner v. Florida (1977), 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393. The opinion was signed by three members of the United States Supreme Court while three other members concurred in holding that the imposition of a death sentence was invalid. In Gardner a jury found defendant guilty, and after a separate sentencing hearing, the jury recommended a life sentence in accordance with Florida procedure. The trial judge then sentenced defendant to death relying on a presentence investigation report, a confidential portion of which was neither disclosed to nor requested by defendant or his counsel. The death penalty was vacated and the case returned for further proceedings because defendant was denied due process when the death penalty was imposed, at least in part, on the basis of confidential information which was not disclosed to defendant or his counsel, and which defendant had no opportunity to deny or explain.

Coleman argues that the sentencing judge had information of which defense counsel had no knowledge and also which he had no opportunity to deny or explain. That information was that Coleman's first court appointed defense counsel believed Coleman to be guilty of deliberate homicide and sexual intercourse without consent. Coleman's present counsel took the case over only two weeks after Coleman underwent the sodium amytal examination. Coleman was aware that he had requested and had undergone the sodium amytal examination, and he was present during the second day of the July 2 and 3 hearing, when the results of that examination were discussed before the court, as were first counsel's comments indicating his belief that his client had participated in the rape and

8

murder of Peggy Harstad. Present counsel could have and should have obtained this information from his client.

There is no indication that the sentencing judge considered defense counsel's statements or the results of the sodium amytal examination. The sentencing judge in his Findings, Conclusions, Judgment and Order of July 10, 1978, stated:

> "Both parties having been given the opportunity to place before the Court all matters each deemed relevant and competent bearing upon a determination of appropriate sentences to be imposed upon the three guilty jury verdicts rendered, and the Court having reviewed all matters submitted, together with the evidence produced at trial, and after observing the defendant's demeanor during the trial and while testifying on his own behalf, the Court now makes the following Findings, Conclusions, Judgment and Order."

The court went on to find:

> "3. That there is no evidence appearing, either in the record of the trial held in this cause or the special sentencing hearing accorded, supporting a finding of any of the circumstances in mitigation under the other numbered paragraphs of Section 95-2206.9, [now cited 46-18-304, MCA] namely paragraphs (2) through (8). There is, likewise, no evidence of any facts which are operative in this case to mitigate the penalty in this cause. The Court therefore finds, as follows:
>
> a. That the offenses charged and proven in this cause were not committed while the defendant was under the influence of any mental or emotional disturbance; and
>
> b. That in committing the acts charged and proved the defendant did not act under extreme duress or under the substantial domination of another person, rather the defendant's decisions to kidnap, rape and murder were the result of conscious deliberation and were his independent decisions arrived at despite contrary arguments advanced by Robert Nank against the murder of the victim; and
>
> c. That the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired; and
>
> d. That the victim was not a participant in the defendant's conduct and did not consent to any of the acts, rather that she resisted, and pleaded with the defendant at various times throughout the course of events which resulted in her death; and

e.  That the defendant was not a relatively minor accomplice, nor was his participation in the offenses relatively minor, rather that the defendant was the decisionmaker and the dominating influence in the criminal acts committed against the victim; and

f.  That the defendant at the time of the commission of the offenses was 27 years of age.

"  .  .  .

CONCLUSIONS

"The Court concludes as follows:

1.  That the aggravating circumstances set forth in Section 95-2206.8 [Now cited 46-18-303, MCA], paragraph (7) exists for the reason following: That the offense of aggravated kidnapping was committed by the defendant and it resulted in the death of the victim, Miss Peggy Harstad.

2.  That none of the mitigating circumstances listed in Section 95-2206.9 R.C.M. are sufficiently substantial to call for leniency.  That the only mitigating circumstance technically present in this cause is that the defendant has no record history of prior criminal activity."

Unlike Gardner, where there was concealment of information, here Mr. Coleman was present in court at the time the plea bargain offer was made by his original defense counsel. There was nothing of substance said during the first day of the hearing which was not effectively repeated before Coleman the second day.  The transcript of that hearing was available to present defense counsel whenever he ordered it. Of particular significance is the total absence from the transcript of the hearing of any admission by either Mr. Coleman or his defense counsel that Mr. Coleman was guilty of the charge of aggravated kidnapping.  At most, the admission from the plea bargaining process was that Mr. Coleman was guilty of deliberate homicide and sexual intercourse without consent which neither suggests nor implies guilt of the charge of aggravated kidnapping.  Finally, between the plea bargaining on July 2 and 3, 1975 and the sentencing, the lengthy trial of the defendant took place and formed a basis known to the defendant and his present trial counsel for the

10

conclusion that Coleman was guilty, not only of deliberate homicide and sexual intercourse without consent, but also aggravated kidnapping. Gardner is not a basis for reversal.

The third case relied on by Coleman is Jones v. Cardwell (9th cir. 1982), 686 F.2d 754. After conviction but before sentencing, a state probation officer interviewed defendant on several occasions. During one of these sessions, defendant confessed to the commission of numerous other crimes. The probation officer reported the confession to the state court judge. The confession was found to be involuntary in that defendant was told that he had to answer all the probation officer's questions. The Ninth Circuit Court held "[a] sentencing judge's broad discretion to consider information in imposing sentence does not extend to consideration of information obtained in violation of a defendant's privilege against self-incrimination." Jones, 686 F.2d at 756.

Coleman chose to be examined under sodium amytal with the advice of his first counsel. There is no indication that Coleman's participation in the examination or in the offer to plea bargain was involuntary. There is also no indication that the sentencing judge considered defense counsel's statements or the sodium amytal examination results in sentencing Coleman. The results of the sodium amytal examination were not made a part of the record or given to the court to any greater extent than they were during the hearings on July 2 and 3, 1975. In contrast to Jones, no information was furnished from Mr. Coleman in violation of a defendant's privilege against self-incrimination.

We fail to find any of the three cases relied upon by Coleman to be persuasive, as all are distinguishable from the present case.

11

The State points out that the present case resembles the trial situation, where evidence of guilt is presented to a judge on a motion to exclude basis, and such evidence is then excluded; after which the same judge continues to act as trial judge and sentencing judge. In such a situation, a sentencing judge aware of excluded evidence, however damning, which has been suppressed, still is allowed to sentence a convicted defendant. There is a similarity between that type of situation and the present case. In addition, while no improperly seized evidence was considered here, we point out that a number of courts have allowed a sentencing judge to consider, during sentencing, evidence which has been illegally seized. See: Elson v. State (1981), ____Alaska____, 633 P.2d 292; Logan v. State (1981), ____Md.____, 425 A.2d 632; State v. Swartz (Iowa 1979) 278 N.W.2d 22; United States v. Lee (4th Cir. 1976), 540 F.2d 1205; United States v. Vandemark (9th Cir. 1975), 522 F.2d 1019; United States v. Baratta (S.D. New York 1973), 360 F.Supp. 512.

The State cites Commonwealth v. Wilson (1980), ____Mass.____, 407 N.E.2d 1229, where counsel for defendants represented to the judge that his clients expressed a desire to testify to facts different from those determined by investigation. On appeal, defendants attempted to use this record to suggest that the voluntary disclosures of their trial counsel so prejudiced the judge as to deprive defendants of due process of law. They did not argue that the disclosures resulted in prejudice during the trial, thus challenging the jury verdict, but only that the sentences imposed by the judge were a product of bias against them caused by the disclosure of their supposed willingness to perjure themselves. As in the present case, in setting forth

12

their claim of bias, defendants ignored the fact that the judge stated his reasons for imposing the sentences.

The Massachusetts High Court held without hesitation that there was no error and that the record demonstrates the fairness with which the trial judge conducted the entire trial, and the evidence fully supports the conclusions he set forth as the basis for his sentence. We find the holding in Wilson to be more persuasive than the cases cited by Coleman. A trial judge can fairly sentence a defendant although aware of statements of the defendant or his counsel which were made outside of the presence of the jury.

"Remand to a different judge is not the usual remedy when error is found in district court proceedings. Remand to a new judge is reserved for 'unusual circumstances'." United States v. Arnett (9th Cir. 1979), 628 F.2d 1162, 1165; Robin, 553 F.2d at 10.

> "[T]he principal factors considered by us in determining whether further proceedings should be conducted before a different judge are (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." Robin, 553 F.2d at 10.

The court in Robin, 553 F.2d at 10, further provided:

> "A resentencing necessitated by the judge's erroneous consideration of certain matters or failure to take others into consideration may involve essentially the same problems and require application of the same criteria."

There is absolutely no indication on the record that the statements made by counsel at the July 2 and 3 hearings in any way affected the sentencing. The sentencing judge not only presided over the July 2 and 3 hearings, but subsequently presided over a three week, 3000-page transcript

trial, with 50 witnesses, which resulted in a jury verdict of guilty on all three counts. The record does not disclose that the judge exhibited any prejudice toward the defendant. Great waste of time and effort would result if another judge were required to acquaint himself with the record in order to resentence Coleman. Under these circumstances, even if resentencing were required, which is not our conclusion, we do not find a basis for requiring a new judge to sit.

In United States v. Thompson (9th Cir. 1976), 541 F.2d 794, the prosecutor recommended a sentence of six months, but the district judge imposed a sentence of four years. Defendant contended that the district judge failed to impose the recommended sentence because he was misinformed that defendant had not cooperated with Drug Enforcement Administration agents pursuant to the plea bargain. There was no indication that the district judge relied on or ever received the misinformation. Defendant was not entitled to rebut since there was no misinformation to rebut. In the present case there is no indication that the judge considered the July 2 and 3 hearings during sentencing.

On July 3, while Coleman was present, defense counsel stated that there was no way in the world that he could state to the jury that Coleman was innocent of deliberate homicide and of sexual intercourse without consent. Even though he made that admission, defense counsel did maintain that the State would have difficulty proving Mr. Coleman committed aggravated kidnapping. We hold that the admission cannot be construed as the equivalent of an admission of aggravated kidnapping.

Defense counsel has failed to show that any improper information was considered by the sentencing judge. He is in a similar position to the defendant in Thompson. See also United States v. Hawkins (5th Cir. 1981), 658 F.2d 279, where

14

defendant claimed the judge based his sentence on misinformation. The Fifth Circuit Court rejected the argument and held "[b]ecause we find that the district court did not rely on erroneous information in sentencing [defendant], there was nothing to correct or rebut." Hawkins, 658 F.2d at 290.

Finally, let us consider the function of the sentencing judge in a capital case, where a jury has convicted the defendant. Under sections 46-18-301 et seq., MCA, the sentencing judge must consider in a separate hearing, certain specific statutory factors, and decide whether arrgavating or mitigating circumstances exist. The judge may not impose the death penalty unless at least one of the statutory aggravating factors exist. State v. Coleman (1979) ____Mont.____, 605 P.2d 1000, 1016. Certainly, as Coleman points out and we have noted above, there is judicial fact finding involved in consideration of these factors. But the guilt or innocence of the defendant is not one of the facts for the sentencing judge to determine where, as here, a jury has convicted the defendant of the crime or crimes with which he is charged. In the absence of an order for new trial, or reversal or modification of the verdict, the jury's determination of guilt establishes the guilt of the defendant as a fact.

In sentencing Coleman, the court set forth the facts brought out at trial, and concluded from those facts that no substantial mitigating factors existed; that far from being a minor accomplice, or even the equal participant suggested by first counsel at the July 2 and 3, 1975, hearing, Coleman was "the decisionmaker and the dominating influence in the criminal acts committed against the victim." The aggravating factor leading to the court's imposition of the death penalty

15

was the conviction of aggravated kidnapping. Section 46-18-303(7), MCA.

We see no finding or conclusion which was not brought out at trial, or which may have arisen from the disputed hearing, apart from the matter of defendant's guilt, which was established as a fact, not by the judge, but by the jury. We find, therefore, no indication that the remarks of Coleman's first counsel could have influenced the sentencing judge to impose the death penalty.

Petition denied.

We concur:

_____
Justice

_____
Chief Justice

_____

_____

_____
Justices

_____
Hon. W.W. Lessley, District
Court Judge, sitting in place
of Mr. Justice John C. Sheehy

16

I respectfully dissent from the majority opinion.

Coleman filed a verified petition for Writ of Habeas Corpus in which he alleges that "because the sentencing judge received and must have considered this information of which Coleman and his counsel had no knowledge nor opportunity to confront, deny or explain," Coleman was denied his rights to a fair tribunal, to confront witnesses, and to have effective assistance of counsel at sentencing. The State has filed no pleading nor affidavit controverting the allegations of the petition. For purposes of review we must assume as true that the sentencing judge received and must have considered Coleman's sodium amytal induced statements in rendering his death sentence. Since it is admitted that the trial court must have considered the information, resentencing is required.

I herein incorporate by reference my entire dissent filed in Coleman vs. State of Montana, 38 St.Rep. 1352, ____ P.2d ____. In that dissent I quoted the following statement of the trial court, made in response to a defense motion for directed verdict in favor of defendant:

"THE COURT: Well, I treat this as a real serious motion.

"MR. OVERFELT: In what regard?

"THE COURT: Well, I am not going to grant the motion, but I say it has some merit.

"MR. OVERFELT: I frankly don't think it has any. We could have gotten to the jury on circumstantial evidence alone, your honor, and I'm confident of that.

"THE COURT: Well, all you have shown is the opportunity for this black boy to do it. You have shown plenty of opportunity."

At this juncture in the trial the accomplice, Robert Nank, had testified. His testimony was not corroborated. The court, by its remarks, obviously did not believe Nank.

17

Nank testified that Coleman was an active participant in the crime and in fact was the prime moving force. The court noted that the prosecution had proven nothing but opportunity.

The transcript, as I have quoted it in my previous dissent, demonstrates vividly why the trial court felt that only opportunity had been proven. Nank's testimony was incredible. During that testimony he admitted that he had previously lied on many occasions in reporting the facts surrounding this incident.

Curiously, when the trial court made its findings in support of the death penalty, the trial court said:

"e. that the defendant was not a relatively minor accomplice, nor was his participation in the offenses relatively minor, rather that the defendant was the decision maker and the dominating influence in the criminal acts committed against the victim;"

The above quoted finding forms the basis for imposition of the death sentence. This finding can only find support in Nank's testimony. The trial judge, being a reasonable person, could not have found this highly incredible evidence to be persuasive in proving Coleman to have been the prime moving force in the commission of the crime.

The circumstances surrounding the sentencing are suspicious, to say the least. There is every indication that the trial judge did in fact consider the results of the sodium amytol test allegedly implicating Coleman in this crime. Of course any experienced criminal defense lawyer would have known that such tests are totally unreliable and could not form a reasonable basis for the damaging admissions counsel made to the court prior to withdrawal of representation.

18

We are here confronted with a record that should leave no choice for the majority. We have an unrebutted allegation, under oath, that the court must have relied upon the results of the sodium amytol test. We have a finding by the court that Coleman was the "decision maker and the dominating influence" in the criminal acts committed. There is no basis for this in the transcript except for the highly incredible testimony of Nank, an admitted liar. Under these circumstances we are required to order a resentencing.

I would remand for resentencing before a different district judge.

_____
Justice

I concur with Justice Morrison.

_____
Justice

Mr. Justice Daniel J. Shea will file a separate opinion later.

19