UNITED STATES

v.

Donald G. BLANCHARD, 439 60 5087
Ship's Serviceman Second Class
(E-5), U.S. Navy.

NMCM 86 4191.

U.S. Navy-Marine Corps Court of
Military Review.

Sentence Adjudged 22 Aug. 1986.

Decided 24 June 1987.

CDR J.A. WILLIAMS, JAGC, USN, Appellate Defense Counsel.

MAJ J.L. POWERS, USMC, Appellate Defense Counsel.

LT YVONNE M. CARROLL, JAGC, USNR, Appellate Government Counsel.

Before GORMLEY, C.J., and RILEY and GRANT, JJ.

GRANT, Judge:

The appellant was originally tried at a general court-martial by members for an offense involving the intentional infliction of grievous bodily harm upon his wife by striking her with a hammer, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. He was convicted of the lesser included offense of assault with a means likely to produce grievous bodily harm, contrary to his plea, and sentenced to a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to pay grade E–1. The finding of guilty and sentence were disapproved by the convening authority on grounds of cumulative error and a rehearing was ordered. The rehearing was held before a trial judge sitting alone and the appellant was again convicted, after pleading not guilty, of assault with a means likely to produce grievous bodily harm. He was sentenced to a dishonorable discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to pay grade E–3. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for one year, forfei-

ture of $500.00 pay per month for three months, and reduction to pay grade E–3, but suspended the execution of the bad-conduct discharge. On appeal, the appellant now claims

> [t]he military judge abused his discretion in agreeing to serve as the fact finder after counsel indicated concern regarding the veracity of the accused's potential testimony.

I

Excerpts from the record of trial bearing on the assigned issue are pertinent and set forth below:

MJ: ... Yesterday, of course, the accused requested a members' trial. The members are standing by. The problem lies in the fact that the defense counsel, during an 802 conference, indicated that there is some concern as to the veracity of testimony that might be offered by the accused should he take the stand. Mr. Rosintoski [Civilian Counsel] is concerned about allowing him to testify and participating in his direct examination.

. . . . .

MJ: I have discussed with counsel the alternatives that are offered therein [referring to *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) ] ... Now I'm quoting: "Counsel would stand mute while the defendant undertook to present the false version in narrative form in his own words unaided by any direct examination. This conduct was thought to be a signal, at least to the presiding judge, that the attorney considered the testimony to be false and was seeking to dissociate himself from that course. Additionally, counsel would not be permitted to discuss the known false testimony in closing argument."

. . . . .

MJ: Clearly, this is a problem with the attorney representing a client before a forum of military judge alone. The court has already been given a clear signal that if the accused testified, he may well say things which are false, but the court would not know which things are false, of course, but the attorney would not be allowed to direct the presentation of the accused's testimony. If the members were to hear the case, which is presently as things stand, the members, of course, would have no signal as to falsity. They would be seeing a narrative recitation, or hearing a narrative recitation, and they could determine for themselves the credibility of that information. Mr. Rosintoski has indicated to me that he desires to withdraw from the case if he is—pardon me, if the accused is adamant in taking the stand, and the court, of course, does not—is not required to excuse the attorney, but can fall back onto the narrative approach which was described a moment ago by the court wherein the attorney would allow the accused to testify in narrative form but would not refer to false testimony in closing argument.

. . . . .

MJ: [To the accused] I would remind you that if you do testify, it will be under oath, you would be subject to perjury. If you were to say anything that was false, and you knew it to be false when you said it, and if it were later proven to be false, you could be prosecuted at a later trial for perjury. Do you understand that?

Accused: Yes, I do. I—I do not wish to make any untrue statements.

MJ: And I appreciate that. Thank you for saying so. I also appreciate the position of your attorney who feels that he would be unable to directly examine you because of uncertainty about what the responses might include.

MJ: Now, Mr. Rosintoski, have I fairly stated our conversation?

CC: Yes, sir, that's—I believe that that fairly states the various conversations in the 802 conference that we had.

. . . . .

MJ: Petty Officer Blanchard, do you wish to have Mr. Rosintoski continue to represent you?

Accused: Yes, I do.

MJ: Very well.

.   .   .   .   .

MJ: And do you wish to continue to be tried by members as opposed to military judge alone?

Accused: No, I'm going with judge alone.

.   .   .   .   .

MJ: Now do you understand that you could be tried by members, and that there are members seated outside, waiting to come in, if you desire them, do you understand that?

Accused: Yes, sir, I understand that.

.   .   .   .   .

MJ: And you want to be tried by me alone, knowing all that I just recited into the record? [Trial judge had previously advised appellant of his rights in regard to forum selection.]

Accused: Yes, I do.

MJ: Very well.

MJ: Mr. Rosintoski, do you care to comment on that point?

CC: Your Honor, I have explained to him the difference between members and judge alone. I have indicated that I've had conversations with you concerning that—what we laid on the record, and the—the accused indicated that he desires at this time to proceed with the judge alone.

MJ: Very well.

## II

A similar issue is now before the Court of Military Appeals in the case of *United States v. Elzy*, 22 M.J. 640 (A.C.M. R.1986), *pet. granted*, 23 M.J. 356 (C.M.A. 1987). The Army Court of Military Review determined that a trial judge sitting alone as the fact finder did not err in failing to recuse himself, where (1) the trial defense counsel attempted to withdraw, the accused testified in the narrative form without the assistance of counsel, and the trial defense counsel failed to argue the accused's testimony on findings, (2) the trial defense counsel's conduct might have "in-

ferentially signaled to the judge that he did not believe all the appellant's testimony was truthful," and (3) the "trial defense counsel ... did not clearly and unequivocally state that he doubted appellant's credibility." *United States v. Elzy*, 22 M.J. at 641, 642. The Court further found no logical reason for the distinction proffered in *Lowery v. Cardwell*, 575 F.2d 727, 731 (9th Cir.1978), requiring a trial judge to step down if advised by trial defense counsel that the client's defense is based on false testimony (unequivocal announcement) but approving of the trial judge acting as a fact finder where trial defense counsel only passively refuses to lend aid to perjury. In this regard, we generally agree with *Elzy* that

[i]f a reasonable judge or juror can be expected to draw the conclusion that a counsel disbelieves his client, then the result should be the same whether the message is delivered directly or by implication.

*United States v. Elzy*, 22 M.J. at 642. The bottom line determination is not the existence of the revelation, but the effect of the revelation on the fairness of the trial. Each case must be examined to determine (1) whether counsel through acts or omissions conceded directly or indirectly the guilt or lack of credibility, in whole or in part, of an accused, (2) the context in which and detail and certainty with which the concession was made, (3) the relationship of the concession to matters materially bearing upon the findings or sentence, (4) the conduct of counsel throughout the trial in representing an accused in relationship to the concession, and (5) the capacity of the fact finder to understand the implications of counsel's conduct and to disregard such concession,—all for the purpose of determining whether an accused was deprived of a fair trial in violation of the due process protection accorded by the Fifth Amendment or Rule for Courts-Martial (R.C.M.) 902, Manual for Courts-Martial, United States, 1984.

If we accept civilian counsel's representations at trial, only general reference was made to the trial judge about counsel's

concern and uncertainty in regard to the appellant's veracity without mention of specific facts or issues. On appeal, however, civilian counsel for the first time swears that he told the trial judge the appellant's testimony would be false, in part, without specifying which part, and further advised the trial judge that the appellant gave him a "phony" document to introduce into evidence. The trial judge, responding under oath, stated civilian counsel "merely indicated concern as to the veracity of the accused's prospective testimony" and "revealed no details of the supposed false information to me, nor even the general subject matter," which is consistent with the pertinent excerpts from the record of trial set forth above. In regard to the alleged false document, the trial judge in his affidavit did not recall civilian counsel providing him with such information. We give little weight to affidavits made by counsel which entirely contradict representations made in open court. The trial judge, on the record, set forth all pertinent matters which he recalled were discussed in the 802 conference. If other matters were addressed, the trial judge's representations, on the record, indicate at worst that he did not remember them and at best that such discussions simply did not occur. At any rate, as the trial judge had no recollection at trial of the matters now raised for the first time on appeal, and there is every indication of record he did not, we conclude that such matters, if they existed, are *de minimis* in our assessment of the trial judge's ability to act objectively. Apparently, such alleged matters were of little import to civilian counsel who declined to make mention of them on the record although given the opportunity, and we will not, under the circumstances, afford them any greater stature on appeal.

Our assessment of the record of trial leads us to conclude that the civilian counsel did not provide the trial judge with any specific information utilized in his findings or sentence. Secondly, a full disclosure of the civilian counsel's revelations to the trial judge, as understood by the trial judge, was made on the record in the presence of the appellant without objection by civilian counsel after which the appellant elected trial by judge alone despite the presence of members standing by. Thirdly, the record of trial reveals the trial judge conducted the trial fairly, and, in fact, excluded evidence offered by the Government which would have reflected adversely upon the appellant's credibility and damaged his theory of defense. Fourthly, the civilian counsel did not entirely disassociate himself from the appellant during the defense case-in-chief. He directed the appellant through his testimony up to and including the point where the appellant testified his wife initially assaulted him with a hammer as he bent over to pick up the keys she had thrown at him. The details of the ensuing struggle and subsequent actions of the appellant were contained in the narrative of the appellant unaided by the civilian counsel. Finally, civilian counsel argued on the merits that the appellant did not strike his wife with the full force of the hammer, which was consistent with the appellant's theory of defense that he accidentally injured his wife in attempting to defend himself by extracting the hammer from her hands. Civilian counsel further attempted to limit the impact of the appellant's initial fabrication that his wife was injured as the result of falling out of the car; explained why the appellant did not immediately seek help for his wife at the scene of the struggle; and attributed the injuries sustained by the appellant's wife to "grappling and fighting for the hammer," all of which were consistent with the appellant's theory of self-defense. In this regard, the civilian counsel argued:

There's no indication she was struck down from behind or beaten severely about any other part of the body as if she was lying prone. *There's no indication that it happened any other way than Petty Officer Blanchard indicated.* Finally, Your Honor, I believe that a person who assaults another person must take the risk of having that person use that weapon at least in a defensive role or in being injured in tak-

ing that weapon away from that person. ... If you come at somebody, the force used should not be greater than what is necessary or greater than you are getting. In this case, he was attacked with a hammer; she got hurt with the hammer while he was attempting to wrestle it away from her. Based on that, Your Honor, and based on the evidence before you, the defense requests that you find that this charge is not proved beyond a reasonable doubt and that you find Petty Officer Blanchard not guilty.

(Emphasis added.)

■ The only portion of the appellant's testimony from which civilian counsel completely dissociated himself was appellant's version of events applicable to the transport of his injured wife to a medical facility, which was an obvious fabrication. Otherwise, the civilian counsel aggressively represented the appellant's theory of self-defense and disputed the Government's evidence at every juncture. Under the circumstances, civilian counsel's revelations to the trial judge in the 802 conference did not constitute an unequivocal announcement of the appellant's guilt. At most, the revelations in connection with the evidence and civilian counsel's conduct at trial inferentially signaled to the trial judge that civilian counsel did not reasonably believe the appellant in all particulars, but such belief did not rise to the level of certainty, amount to an implicit concession of guilt, or deter civilian counsel during closing argument from advocating the appellant acted in self-defense. Under the circumstances of this case, we conclude that the trial judge, who is presumed "to disregard expressions of counsel's personal opinions about facts in issue," could and did exclude general reservations of counsel from his deliberations as reflected by his judicious conduct of the trial. *See United States v. Elzy*, 22 M.J. at 642, citing *United States v. Montgomery*, 42 C.M.R. 227 (C.M.A. 1970). In this regard, the appellant's affirmative choice of trial by judge alone, after full disclosure, is evidence that he

believed the trial judge would conduct the trial fairly, a view apparently also shared by civilian counsel, at least at trial, by virtue of not conducting *voir dire* of the trial judge before his client made the forum selection to be tried by judge alone and by not challenging the trial judge for cause or expressing any concern, on the record, about the trial judge's qualifications to act as the fact finder.

■ As such, we conclude the appellant was not denied a fair trial under the due process requirements of the Fifth Amendment. Furthermore, we find no evidence that (1) the "military judge's impartiality might reasonably be questioned," under R.C.M. 902(a), where all matters known to the trial judge were fully disclosed to the appellant, the appellant elected trial by judge alone, and no objection was made by civilian counsel or (2) the trial judge was biased or prejudiced by virtue of personal knowledge of disputed evidentiary facts concerning the proceedings, under R.C.M. 902(b), where civilian counsel did not provide the trial judge with specific information bearing on controverted evidence introduced at trial, civilian counsel actively represented the appellant's interests regarding his theory of self-defense, and the record of trial reveals the trial judge conscientiously carried out his duties in assuring the appellant received a fair trial.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed. We have considered the clemency petition.

Chief Judge GORMLEY and Judge RILEY concur.